1  JACOB M. HEATH (STATE BAR NO. 238959)
   jheath@orrick.com
2  JONATHAN J. LIU (STATE BAR NO. 328955)
   jonathanliu@orrick.com
3  ORRICK, HERRINGTON & SUTCLIFFE LLP
   1000 Marsh Road
4  Menlo Park, CA  94025-1015
   Telephone:    +1 650 614 7400
5  Facsimile:    +1 650 614 7401

6  Attorneys for Defendant
   Meta Platforms, Inc.
7

8
                UNITED STATES DISTRICT COURT
9
              NORTHERN DISTRICT OF CALIFORNIA
10
                  SAN FRANCISCO DIVISION
11

12  SUSAN LLOYD,                          Case No. 3:21-cv-10075-EMC

13            Plaintiff,                   **DEFENDANTS' MOTION TO DISMISS
                                           PLAINTIFF'S FIRST AMENDED
14       v.                                COMPLAINT PURSUANT TO RULE
                                           12(B)(6) AND MEMORANDUM OF
15  FACEBOOK, INC. et al.,                 POINTS AND AUTHORITIES IN
                                           SUPPORT**
16            Defendants.
                                           Date:      July 21, 2022
17                                         Time:      1:30 PM
                                           Courtroom: Courtroom 5 – 17th Floor
18                                         Judge:     Hon. Edward M. Chen

19

20

21

22

23

24

25

26

27

28

1

## TABLE OF CONTENTS

2
**Page**

3    I.      INTRODUCTION ..................................................................................................2

4    II.     BACKGROUND ...................................................................................................3

5    III.    LEGAL STANDARD.............................................................................................5

6    IV.     ARGUMENT .........................................................................................................5

7            A.      The FAC Fails To State Any Cause Of Action Against Defendants.......................5

8                    1.      The FAC fails to state any claim against Mr. Zuckerberg. ..........................6

9                    2.      Plaintiff fails to state a claim for violation of the ADA..............................7

10                   3.      Plaintiff fails to state a claim for violation of Section 508 of the
                             Rehabilitation Act of 1973...........................................................................8

11
                     4.      Plaintiff fails to state a claim for violations of the California Unruh
12                           Act.................................................................................................................9

13                   5.      Plaintiff fails to state a claim for fraud. ....................................................10

14                   6.      Plaintiff fails to state invasion of privacy claims under the
                             California Constitution or the common law................................................12
15
                     7.      Plaintiff fails to state a claim for breach of contract.................................17
16
                     8.      Plaintiff fails to state a claim for negligence or negligent infliction
17                           of emotional distress. .................................................................................19

18           B.      Section 230 Of The Communications Decency Act Independently Bars
                     Meta's Liability For Fraud, Invasion Of Privacy, Breach Of Contract,
19                   Negligence, And Negligent Infliction Of Emotional Distress Claims..................21

20                   1.      Meta is an interactive computer service provider. .....................................22

21                   2.      The content was provided by another information content provider. ........22

22                   3.      Plaintiff's claims seek to treat Defendants as a "publisher." ....................22

23           C.      Plaintiff Should Not Be Granted Leave To Amend.............................................23

24   V.      CONCLUSION....................................................................................................24

25

26

27

28

DEFENDANTS' MOTION TO DISMISS
Case No. 3:21-cv-10075-EMC

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*A.B. v. Facebook, Inc.*,
  2021 WL 2791618 (C.D. Cal. June 1, 2021) ..........................................................................22

*Ahern v. Apple Inc.*,
  411 F. Supp. 3d 541 (N.D. Cal. 2019) ..................................................................................11

*Appling v. Wachovia Mortg., FSB*,
  745 F. Supp. 2d 961 (N.D. Cal. 2010) ..................................................................................17

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ................................................................................................................5

*Banga v. Equifax Information Servs.*
  LLC, No. 14–cv–03038–WHO, 2015 WL 3799546 (N.D. Cal. June 18, 2015) ...................16

*Barnes v. Yahoo!, Inc.*,
  570 F.3d 1096 (9th Cir. 2009) .........................................................................................21, 22

*Bass v. Facebook, Inc.*,
  394 F. Supp. 3d 1024 (N.D. Cal. 2019) .................................................................................3

*Belluomini v. Citigroup, Inc.*,
  No. CV 13-01743, 2013 WL 3855589 (July 24, 2013 N.D. Cal. 2013) ................................16

*Butler-Rupp v. Lourdeaux*,
  134 Cal. App. 4th 1220 (2005) .............................................................................................20

*C.B. v. Sonora Sch. Dist*,
  691 F. Supp. 2d 1123 (E.D. Cal. 2009)................................................................................8, 9

*Calise v. Meta Platforms, Inc.*,
  No. 21-cv-06186-JSW, 2022 WL 1240860 (N.D. Cal. April 27, 2022)................................22

*Caraccioli v. Facebook, Inc.*,
  167 F. Supp. 3d 1056 (N.D. Cal. 2016), *aff'd*, 700 F. App'x 588 (9th Cir.
  2017) ............................................................................................................................. *passim*

*Children's Health Defense v. Facebook, Inc.*,
  546 F. Supp. 3d 909 ...............................................................................................................6

*Clavon v. TSAY JBR, Inc.*,
  No. 2:10–CV–05673–JHN–PLAx, 2010 WL 11601827 (C.D. Cal. Oct. 21,
  2020) .......................................................................................................................................9

*Cross v. Facebook, Inc.*,
  14 Cal. App. 5th 190 (2017) ...........................................................................................22, 23

*Cullen v. Netflix*,
  880 F. Supp. 2d 1017 (N.D. Cal. 2012) .................................................................................9

*Davidson v. Hewlett-Packard Co.*,
  No. 5:16-cv-01928, 2021 WL 4222130 (N.D. Cal. Sept. 16, 2021) ........................................13

*Doe No. 1 v. Uber Technologies, Inc.*,
  No. 310131, 2022 WL 1769112 (N.D. Cal. June 1, 2022) .....................................................20

*Dohrmann v. Intuit, Inc.*,
  823 F. App'x 482 (9th Cir. 2020) ..........................................................................................13

*Earll v. eBay, Inc.*,
  No. 5:11–CV–00262–JF HRL, 2011 WL 3955485 (N.D. Cal. Sept. 7, 2011) ...................7, 10

*Ebeid v. Facebook, Inc.*,
  2019 WL 2059662 (N.D. Cal. May 9, 2019) ....................................................................18, 22

*Erlich v. Menezes*,
  21 Cal. 4th 543 (1999) ............................................................................................................20

*In re Facebook, Inc., Consumer Privacy User Profile Litig.*,
  402 F. Supp. 3d 767 (N.D. Cal. 2019) ....................................................................................14

*Fecht v. Price Co.*,
  70 F.3d 1078 (9th Cir. 1995) ..................................................................................................10

*Fed. Agency of News LLC v. Facebook, Inc.*,
  432 F. Supp. 3d 1107 (N.D. Cal. 2020) ..................................................................................22

*Four Navy Seals v. Associated Press*,
  413 F.Supp.2d 1136 (C.D. Cal. 2005) ....................................................................................16

*Goddard v. Google, Inc.*,
  640 F. Supp. 2d 1193 (N.D. Cal. July 30, 2009) ....................................................................19

*Gomez v. Gates Ests., Inc.*,
  No. C 21-7147 WHA, 2022 WL 458465 (N.D. Cal. Feb. 15, 2022) .........................................7

*Gomez v. Nationstar Mortg.*,
  LLC, 2015 WL 966224 (E.D. Cal. March 4, 2015) .................................................................12

*Gonzalez v. Uber Techs., Inc.*,
  305 F. Supp. 3d 1078 (N.D. Cal. 2018) ..................................................................................14

*In re Google Assistant Priv. Litig.*,
  457 F. Supp. 3d at 829 ......................................................................................................14, 16

*In re Google Location History Litig.*,
  428 F. Supp. 3d 185 (N.D. Cal. 2019) ..............................................................................12, 14

*In re Google, Inc. Priv. Policy Litig.*,
  58 F. Supp. 3d 968 (N.D. Cal. 2014) ......................................................................................15

*Gray v. Preferred Bank*,
  2010 WL 11508777 (S.D. Cal. June 10, 2020) .......................................................................10

*Hassan v. Facebook, Inc.*,
  2019 WL 3302721 ...................................................................................................................17

iv

*Hayes v. Facebook,*
   No. 19-cv-02106-TSH, 2019 WL 5088805 (N.D. Cal. Aug. 15, 2019) ...................................6

*Herskowitz v. Apple, Inc.,*
   940 F. Supp. 2d 1131 (N.D. Cal. 2013) ...........................................................................11, 12

*Hogan v. Weymouth,*
   No. CV 19-2306-MWF, 2020 WL 8028111 (C.D. Cal. Nov. 12, 2020) ................................17

*Huggins v. Longs Drugs Stores Cal., Inc.,*
   6 Cal. 4th 124 (1993) .........................................................................................................19

*Igbonwa v. Facebook, Inc.,*
   No. 18-cv-02027-JCS, 2018 WL 4907632 (N.D. Cal. Oct. 9, 2018) ...........................7, 22, 23

*In re iPhone Application Litig.,*
   844 F. Supp. 2d 1040 (N.D. Cal. 2012) ...........................................................................15

*Jurin v. Google, Inc.,*
   695 F. Supp. 2d 1117 (E.D. Cal. 2010) ..............................................................................22

*Kasramehr v. Wells Fargo Bank N.A.,*
   No. CV 11–0551 GAF, 2011 WL 12473383 (C.D. Cal. May 18, 2011) ................................20

*Kent v. Microsoft Corp.,*
   No. SACV13-0091 DOC ANX, 2013 WL 3353875 (C.D. Cal. July 1, 2013) .......................12

*Kimzey v. Yelp! Inc.,*
   836 F.3d 1263 (9th Cir. 2016) ...........................................................................................24

*King v. Facebook, Inc.,*
   No. 19-cv-01987-WHO, 2019 WL 6493968 (N.D. Cal. Dec. 3, 2019).....................18, 21, 24

*Kingsburg Apple Packers, Inc. v. Ballantine Produce Co., Inc.,*
   2010 WL 2817056 (E.D. Cal. July 16, 2010) .......................................................................6

*Klayman v. Zuckerberg,*
   753 F.3d 1354 (Ct. of App. D.D.C. 2014) ..........................................................................7

*Lapping v. Wyndham Vacation Ownership, Inc.,*
   No. 19-cv-07549, 2020 WL 6381355 (N.D. Cal. October 29, 2020) ....................................10

*Lee v. City of Los Angeles,*
   250 F.3d 668 (9th Cir. 2001) ..............................................................................................5

*Lintz v. Bank of America, N.A.,*
   No.: 5:13–CV–01757–EJD, 2013 WL 5423873 (N.D. Cal. Sept. 27, 2013)...........................10

*Lopez v. Smith,*
   203 F.3d 1122 (9th Cir. 2000) ............................................................................................23

*Low v. Linkedin Corporation,*
   900 F. Supp. 2d 1010 (N.D. Cal. 2012) .............................................................................15

*MacRae v. HCR Manor Care Services,*
   No. SACV 14-0715, 2014 WL 12588464 (C.D. Cal. Oct. 30, 2014) .......................................6

v

*Melton v. Boustred*,
    183 Cal. App. 4th 521 (2010) ...................................................................................................19

*Mendiondo v. Centinela Hosp. Med. Ctr.*,
    521 F.3d 1097 (9th Cir. 2008) ..................................................................................................5

*Minor v. County of Los Angeles*,
    2015 WL 13711269 (C.D. Cal. 2015).......................................................................................15

*Moore v. Equity Residential Mgmt., LLC*,
    2019 WL 5697934 (N.D. Cal. Nov. 3, 2019) ............................................................................9

*Nat'l Fed'n of the Blind v. Target Corp.*,
    452 F. Supp. 2d 946 (N.D. Cal. 2006) ......................................................................................7

*Payan v. Los Angeles Community College District*,
    2019 WL 9047062 (C.D. Cal. April 23, 2019) .........................................................................8

*Perfect 10, Inc. v. CCBill LLC*,
    481 F.3d 751 (9th Cir. 2007), *opinion amended and superseded on denial of*
    *reh'g*, 488 F.3d 1102 (9th Cir. 2007).......................................................................................21

*Perkins v. LinkedIn Corp.*,
    53 F. Supp. 3d 1190 (N.D. Cal. 2014) ....................................................................................13

*Potter v. Firestone Tire & Rubber Co.*,
    6 Cal. 4th 965 (1993) ...............................................................................................................20

*Reddy v. Litton Indus., Inc.*,
    912 F.2d 291 (9th Cir. 1990) ...................................................................................................24

*Sikhs for Justice, Inc. v. Facebook, Inc.*,
    144 F. Supp. 3d 1088 (N.D. Cal. 2015)...................................................................................21

*Smith v. Facebook, Inc.*,
    262 F. Supp. 3d 943 (N.D. Cal. 2017), *aff'd*, 745 F. Appx. 8 (9th Cir. 2018)............12, 13, 14

*Sonora Diamond Corp. v. Super. Ct.*,
    83 Cal. App. 4th 523 (2000) .....................................................................................................6

*Sukonik v. Wright Medical Tech. Inc.*,
    No. CV 14–08278 BRO, 2015 WL 10682986 (C.D. Cal. Jan. 26, 2015) ...............................11

*Sunnyside Development Co. v. Opsys Ltd.*,
    No. C 05-0553, 2005 WL 1876106 (N.D. Cal. Aug. 8, 2005)..................................................11

*Taus v. Loftus*,
    40 Cal. 4th 683 (2007) .............................................................................................................16

*Tuttle v. Chase Ins. Life & Annuity Co.*,
    2007 WL 2790359 (N.D. Cal. Sept. 20, 2007) .......................................................................19

*U.S. v. Ritchie*,
    342 F.3d 903 (9th Cir. 2003) .....................................................................................................3

DEFENDANTS' MOTION TO DISMISS
Case No. 3:21-cv-10075-EMC

*Vess v. Ciba-Geigy Corp. USA*,
    317 F.3d 1097 (9th Cir. 2003) ...............................................................................10

*Weyer v. Twentieth Century Fox Film Corp.*,
    198 F.3d 1104 (9th Cir. 2000) .................................................................................7

*Wong v. Jing*,
    189 Cal. App. 4th 1354 (2010) .............................................................................19

*Young v. Facebook*,
    790 F. Supp. 2d 1110 (N.D. Cal. 2011) ...................................................... *passim*

*Zbitnoff v. Nationstar Mortg., LLC*,
    2014 WL 1101161 (N.D. Cal. 2014) ......................................................................15

**Statutes**

29 U.S.C. § 794d(a)(1)(A) ...............................................................................................8

42 U.S.C. § 51(b) ............................................................................................................9

47 U.S.C. § 230(c)(1)...........................................................................................21, 22, 23

47 U.S.C. § 230(f)(2) ......................................................................................................22

Americans with Disabilities Act .............................................................................. *passim*

Cal. Code Civ. Pro. § 338(d) .........................................................................................12

Communications Decency Act § 230 ........................................................................ *passim*

Data Protection Act..........................................................................................................2

Plaintiff's Rehabilitation Act .........................................................................................8

Rehabilitation Act of 1973..................................................................................... 2, 4, 8

Rehabilitation Act of 1973 § 508 .............................................................................2, 8

Unruh Act ................................................................................................................. *passim*

**Other Authorities**

California Constitution..........................................................................................12, 15

California Constitution, Article 1, § 1 ...................................................................2, 12

Fed. R. Civ. Proc. 8 .........................................................................................................4

Fed. R. Civ. Proc. 9(b) ...........................................................................................10, 12

Fed. R. Civ. Proc. 12(b)(6) .............................................................................................5

**NOTICE OF MOTION AND RELIEF SOUGHT**

PLEASE TAKE NOTICE that on July 21, 2022, at 1:30 p.m., or as soon thereafter as may be heard by the Honorable Judge Edward M. Chen, United States District Court, San Francisco Division, 450 Golden Gate Avenue, San Francisco, CA 94102, Defendants Meta Platforms, Inc. and Mark Zuckerberg will and hereby do move to dismiss Plaintiff's First Amended Complaint on the grounds that Plaintiff fails to state a claim upon which relief can be granted and some of Plaintiff's claims are barred by Section 230(c)(1) of the Communications Decency Act, 47 U.S.C. § 230(c)(1).

This motion is based upon this notice of motion and motion, the memorandum of points and authorities in support that follows, the proposed order filed concurrently herewith, the request for judicial notice and declaration in support, all pleadings and papers on file in this action, the arguments of counsel, and upon such further oral and written argument and evidence as may be presented at or prior to the hearing on this motion.

Dated:  June 14, 2022                                   ORRICK, HERRINGTON & SUTCLIFFE LLP

                                                        By:    */s/ Jacob M. Heath*
                                                               JACOB M. HEATH

                                                               Attorney for Defendant
                                                               META PLATFORMS, INC.

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

**I.     INTRODUCTION**

Shortly after Defendants filed their motion to dismiss Plaintiff Susan Lloyd's original complaint, Plaintiff filed a First Amended Complaint against Meta Platforms, Inc., Facebook, Inc., and Mark Zuckerberg, asserting the following causes of action: (1) Violations of the Americans with Disabilities Act, (2) Violations of Section 508 of the Rehabilitation Act of 1973, (3) Violations of the Unruh Act, (4) Fraud and Intentional Misrepresentation, (5) Violations of the California Constitution, Article 1, Section 1 and "Data Protection Act Violations," (6) Invasion of Privacy, (7) Breach of Contract, and (8) Negligence and Negligent Infliction of Emotional Distress ("NIED").   The FAC is nearly identical to her original complaint, still containing a haphazard collage of claims and allegations.  Plaintiff's FAC is still premised on three unrelated theories: (1) the Facebook platform purportedly has various accommodation barriers; (2) allegedly as early as 2016, *third-party users* (not the Defendants) have harassed and bullied Plaintiff on the Facebook platform, and (3) Defendants allegedly track Plaintiff's internet activity on other websites.  Similar to her original complaint, Plaintiff's FAC fails in its entirety to assert a viable cause of action for which relief can be granted.

As to Mr. Zuckerberg, Plaintiff has not pled specific facts to show why Mr. Zuckerberg is individually liable for any of the alleged causes of action.  Crucially, Plaintiff has not alleged facts to establish that Mr. Zuckerberg is the *alter ego* of Meta or anything that would warrant piercing the corporate veil.

As to all Defendants, Plaintiff again fails to allege facts sufficient to assert any cause of action.

*First,* Plaintiff's accommodation claims—*i.e.*, her first, second, and third causes of action for violations of the Americans with Disabilities Act ("ADA"), the Rehabilitation Act of 1973, and the Unruh Act—all fail to allege the necessary elements to state a claim under any of the statutes.  Crucially, Meta is not a place of public accommodation under the law—that alone is fatal to her accommodation-based claims.  Also fatal to Plaintiff's accommodation-based claims is the complete absence of any facts that would establish that the alleged discrimination was

intentional.

*Second,* Plaintiff's claims based on third-party users' alleged activity on the Facebook platform—*i.e.*, her fourth, sixth, seventh, and eighth causes of action for fraud, invasion of privacy for public disclosure of private facts, breach of contract, and negligence and NIED—all seek to hold Defendants liable for failing to remove content created and posted by third-party users. Taking Plaintiff's allegations as true, they are still insufficient to state a claim. For example, Plaintiff fails to identify any specific false statements to support her fraud claim, or any specific contract provision that was allegedly breached by Defendants to support her breach of contract claim.

*Third,* Plaintiff's fifth and sixth causes of action for invasion of privacy—which are based on Defendants' alleged targeted advertising tools—also fail because Plaintiff consented to the Terms of Service and Data Policy, which disclosed the activity of which she now complains. Further, Plaintiff's conclusory statement that Defendants invade her reasonable expectation of privacy by tracking her activity when she is not logged into the Facebook platform is wholly insufficient to state a claim for invasion of privacy.

*Lastly*, many of Plaintiff's claims are independently barred by Section 230 of the Communications Decency Act ("CDA").

For these reasons, this Court should dismiss Plaintiff's entire FAC with prejudice.

## II.   BACKGROUND

Defendant Meta Platforms, Inc.[1] (f/k/a Facebook, Inc.) ("Meta") and its Facebook platform (the "Facebook platform") help give people the power to build community and bring the world closer together. Meta's relationship with users—including Plaintiff—is governed by its Terms of Service, to which all users agree in order to create a Facebook account.[2] Declaration of

---

[1] On October 28, 2021, Facebook, Inc. changed its name to Meta Platforms, Inc.

[2] Meta's Terms of Service were formerly known as Facebook's Statement of Rights and Responsibilities, which the FAC makes extensive reference to, *see, e.g.*, FAC ¶¶ 22, 38, and, along with the Data Policy, "form[] the basis of the plaintiff's claim." *U.S. v. Ritchie*, 342 F.3d 903 (9th Cir. 2003). Thus, they are "considered part of the pleading." *Id.*; *Bass v. Facebook, Inc.*, 394 F. Supp. 3d 1024, 1037 n.1 (N.D. Cal. 2019) (granting Facebook's request to incorporate by reference the Terms of Service because the consolidated complaint relied upon them to allege the breach of contract claims and statutory claims). Defendants have also filed a Request for Judicial

Jacob M. Heath ("Heath Decl.") in Support of Meta's Request for Judicial Notice ("RJN"), Ex. A. Mr. Zuckerberg is Meta Platforms, Inc.'s Chairman and CEO.[3]  FAC ¶ 8.  The FAC names Mr. Zuckerberg as a defendant, but it fails to provide any facts specific to his individual involvement separate and apart from the allegations lodged against Meta generally.

Plaintiff Susan Lloyd claims to be a Pennsylvania resident who has "severe vision issues" and is thus a part of a "protected class who has been disabled under the ADA since 2006."  FAC ¶ 5.  In her FAC, Plaintiff now claims that she only began encountering accessibility barriers with the Facebook platform in 2020 when her health declined.  FAC ¶ 13.  Although Plaintiff does not allege when she started to use the Facebook platform, she repeatedly asserts that the alleged harassment has been ongoing since 2016.  *See, e.g.*, FAC ¶ 23.

On December 29, 2021, Plaintiff filed her original complaint.  Dkt. No. 1.  On May 25, 2022, Defendants moved to dismiss that Complaint, arguing that Plaintiff failed to state a claim for every one of her causes of action, and that Section 230 independently barred many of her claims.  Dkt. No. 13.  In an attempt to correct the deficiencies in her original complaint, on May 31, 2022, Plaintiff filed an FAC against Meta and Mr. Zuckerberg, asserting the same causes of action as her original complaint.  *See generally* FAC (bringing claims for violations of the ADA, Rehab Act, Unruh Act, as well as for fraud, invasion of privacy, breach of contract, negligence and NIED).

Plaintiff alleges that Facebook platform users have harassed or bullied her on the Facebook platform since 2016.  *See, e.g.*, FAC ¶ 23.  According to Plaintiff, these users include her neighbor Joshua Thornsbery, who allegedly "share[d] content to threaten Lloyd."  *Id.* ¶ 23. Plaintiff does not claim that Defendants created any of the content at issue.  Rather, Plaintiff

---

Notice of these publicly available documents.

[3] While the FAC includes Meta and Mark Zuckerberg as defendants, it fails to meaningfully distinguish between—and hence to provide adequate notice to—the two distinct parties, as required by Rule 8.  Unlike in her original complaint, for each claim, Plaintiff now tacks on a conclusory statement that "Zuckerberg should be held liable under alter ego of the company as he was personally involved and/or directed the challenged acts Lloyd states."  *See, e.g.*, FAC ¶ 13. For the reasons stated below, *see infra* IV.A.1, Plaintiff has still failed to allege any facts (nor could she) establishing that Mr. Zuckerberg should be liable under an "alter ego" theory of liability.  As such, the FAC should be dismissed against Mr. Zuckerberg with prejudice.

claims that the users persisted in their harassment because Defendants purportedly allowed them to, due to their "long history of not abiding by their own Rules." *Id.* ¶ 9.  Plaintiff does not identify specific contractual "rules" that Defendants have ignored in relation to Plaintiff.  *Id.* ¶¶ 38-39.

Plaintiff separately asserts that the Facebook platform is not accessible to anybody who has no arms or problems with vision, the font cannot be made bigger, the form fields do not have visible labels, and there is no accessibility statement.  *See* FAC ¶ 10.

Plaintiff additionally claims that Defendants "illegally track[s] users even when the user is logged off of Facebook," when she is on "third party sites such as Chewy.com, Target.com," and that she "never gave permission for this to occur."  FAC ¶¶ 30-31.  Plaintiff claims she is aware of this alleged "track[ing]" because advertisements from these sites apparently show up on her page "immediately."  *Id.* ¶¶ 30-32.  Plaintiff seeks over a $100,000 in damages and a court order forcing Defendants to, among other demands, permanently ban multiple Facebook platform users, and to "not invade their users' privacy when they are logged off of Facebook."

## III.   LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).  Dismissal is appropriate "where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory."  *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008).  In conducting a Rule 12(b)(6) analysis, the court may consider the complaint, material relied upon in the complaint, and material subject to judicial notice.  *See Lee v. City of Los Angeles*, 250 F.3d 668, 688–89 (9th Cir. 2001).  The court must accept "well-pleaded factual allegations" as true, but need not "accept as true a legal conclusion couched as a factual allegation."  *Iqbal*, 556 U.S. at 664, 678.

## IV.   ARGUMENT

### A.   The FAC Fails To State Any Cause Of Action Against Defendants.

Each of Plaintiff's claims is fatally deficient on the face of the pleadings and should be dismissed for failure to state a claim for relief pursuant to Rule 12(b)(6).

### 1.    The FAC fails to state any claim against Mr. Zuckerberg.

Plaintiff's claims against Mr. Zuckerberg all fail because she has not alleged any facts to show why Mr. Zuckerberg is individually liable under an alter ego theory.  And, in any event, any claims against him are barred for the same reasons the claims against Meta are barred.

*First*, courts have dismissed similar complaints against Mr. Zuckerberg where, as here, the pleading is devoid of specific allegations against Mr. Zuckerberg.  *See, e.g., Hayes v. Facebook*, No. 19-cv-02106-TSH, 2019 WL 5088805 *2 (N.D. Cal. Aug. 15, 2019) (referencing prior dismissal of claims against Zuckerberg where complaint had "no allegations against Zuckerberg sufficient to name him as a defendant"); *Brock v. Zuckerberg*, 2021 WL 2650070, at *4 (S.D.N.Y. June 25, 2021) (dismissing claims against Mr. Zuckerberg for failing to plead sufficient facts about Mr. Zuckerberg's personal involvement); *Johnson v. Zuckerberg*, 2017 WL 5468295, at *2 (same).  Here, Plaintiff's FAC contains no distinct factual allegations directed at Mr. Zuckerberg.  Rather, Plaintiff repeatedly asserts that Mr. Zuckerberg is "personally involved and/or directed the challenged acts cited by Lloyd," but does not provide *a single fact* supporting Mr. Zuckerberg's involvement.  *See, e.g.*, FAC ¶¶ 18, 38.

*Second*, even if Plaintiff had directed specific factual allegations toward Mr. Zuckerberg—which she did not—Plaintiff failed to sufficiently allege that Mr. Zuckerberg should be liable under an alter ego theory, which would be necessary to hold a CEO liable for its company's conduct.  *MacRae v. HCR Manor Care Services*, No. SACV 14-0715, 2014 WL 12588464 *7-8 (C.D. Cal. Oct. 30, 2014) (granting motion to dismiss officer-defendants where allegations in complaint insufficient to pierce corporate veil).  Plaintiff's conclusory assertion that Mr. Zuckerberg is liable under "alter ego" as CEO of the company is insufficient.  *See, e.g.*, FAC ¶¶ 18, 38.  Alter ego is an "extreme remedy, sparingly used."  *Sonora Diamond Corp. v. Super. Ct.*, 83 Cal. App. 4th 523, 539–41 (2000).  Thus, under California law, "the kind of equitable result that makes alter ego liability appropriate is an *abuse of the corporate form*, such as under-capitalization or misrepresentation of the corporate form to creditors."  *Kingsburg Apple Packers, Inc. v. Ballantine Produce Co., Inc.*, 2010 WL 2817056 *4-5 (E.D. Cal. July 16, 2010) (emphasis added); *see, e.g., Children's Health Defense v. Facebook, Inc.*, 546 F. Supp. 3d 909, 926-27

1    (dismissing claims against Mr. Zuckerberg both as an individual and as an alter ego because the

2    complaint did not sufficiently allege that he was personally involved in or directed the challenged

3    acts).  Plaintiff has not alleged anything of the sort.

4        *Third*, to the extent Mr. Zuckerberg was included simply because he is CEO of Meta, the

5    bases for dismissal discussed in the forthcoming sections, including Section 230 protection, apply

6    to any claims against him.  *See, e.g.*, *Igbonwa v. Facebook, Inc.*, No. 18-cv-02027-JCS, 2018 WL

7    4907632, at *6 (N.D. Cal. Oct. 9, 2018) (dismissing claims against Meta and Mr. Zuckerberg as

8    barred by Section 230); *Klayman v. Zuckerberg*, 753 F.3d 1354, 1357-58 (Ct. of App. D.D.C.

9    2014) (same).  For these reasons, the FAC against Mr. Zuckerberg must be dismissed in its

10   entirety with prejudice.

11            **2.        Plaintiff fails to state a claim for violation of the ADA.**

12       To prevail under the ADA, a plaintiff must show that: "(1) she is disabled within the

13   meaning of the ADA; (2) the defendant is a private entity that owns, leases, or operates a *place of*

14   *public accommodation*; and (3) the plaintiff was denied public accommodations by the defendant

15   because of her disability."  *Young v. Facebook,* 790 F. Supp. 2d 1110, 1115 (N.D. Cal. 2011)

16   (emphasis added).  Plaintiff's claim for violation of the ADA fails for two independent reasons.

17       *First,* contrary to Plaintiff's assertion, the Facebook platform is not a "place of public

18   accommodation" under California law.  Under controlling Ninth Circuit authority, "places of

19   public accommodation" are limited to "actual physical spaces."  *Weyer v. Twentieth Century Fox*

20   *Film Corp*., 198 F.3d 1104, 1114 (9th Cir. 2000).  The Ninth Circuit has generally limited "places

21   of public accommodation" to physical spaces, except in rare circumstances where websites "have

22   a sufficient 'nexus' to a physical place of public accommodation."  *Nat'l Fed'n of the Blind v.*

23   *Target Corp*., 452 F. Supp. 2d 946, 952 (N.D. Cal. 2006) (dismissing plaintiffs' claims to the

24   extent that Target.com offers information services unconnected to Target stores); *see, e.g.*, *Earll*

25   *v. eBay, Inc.,* No. 5:11–CV–00262–JF HRL, 2011 WL 3955485, at *2 (N.D. Cal. Sept. 7, 2011)

26   (holding eBay's website is not a place of public accommodation under the ADA).  The nexus

27   requirement is met *only* where a website's "inaccessibility impedes [the plaintiff's] access to the

28   services of defendant's physical office."  *Gomez v. Gates Ests., Inc.*, No. C 21-7147 WHA, 2022

WL 458465, at *4 (N.D. Cal. Feb. 15, 2022).

As to Meta specifically, courts have held—as a matter of law —that unless Meta actually "owns, leases (or leases to) or operates" a physical location, Meta's internet services do not have a nexus to a physical place of public accommodation.  *See Young*, 790 F. Supp. 2d at 1116 (dismissing ADA claim because "Facebook's internet services [] do not have a nexus to a physical place of public accommodation for which Facebook may be liable under the statute").  Thus, although Plaintiff asserts that "Title 3 recognizes websites as places of public accommodation" (FAC ¶ 10), Plaintiff fails to allege any facts establishing that the Facebook platform is a place of public accommodation itself, or that the Facebook platform has a sufficient nexus to a physical location to be considered a place of public accommodation.

*Second*, even if the Facebook platform were a physical place of public accommodation— which it is not—Plaintiff could not state a claim for relief under the ADA because she fails to sufficiently allege that she was "denied public accommodations by [Meta] *because of her disability*," or that Meta even knew about her disability.  *Young*, 790 F. Supp. 2d at 1115 (emphasis added).  Plaintiff asserts that the Facebook platform is not accessible for a myriad of reasons (*see* FAC ¶ 10), and that Defendants' discrimination was "because of her disability," but she does not articulate any facts establishing how this alleged conduct was motivated by her disability.  More specific allegations establishing that Plaintiff was denied public accommodation by Meta because of her disability are necessary.  *See, e.g.*, *C.B. v. Sonora Sch. Dist*, 691 F. Supp. 2d 1123, 1153 (E.D. Cal. 2009) (dismissing plaintiff's ADA claim for failure to plead facts to support that defendants' conduct was motivated by plaintiff's disability).  Accordingly, because this failure is fatal to her ADA claim, it must be dismissed with prejudice.

### 3.   Plaintiff fails to state a claim for violation of Section 508 of the Rehabilitation Act of 1973.

Plaintiff's Rehabilitation Act claim must be dismissed because this statute only applies to "federal departments and agencies."  *Payan v. Los Angeles Community College District*, 2019 WL 9047062, at *13 n.7 (C.D. Cal. April 23, 2019) ("Section 508 imposes requirements on federal departments and agencies…"); *see* 29 U.S.C. § 794d(a)(1)(A).  Meta is a private company, and Mr. Zuckerberg is an individual.  Thus, Plaintiff's Rehab Act claim must be

8

1    dismissed with prejudice.

2        **4.    Plaintiff fails to state a claim for violations of the California Unruh**
              **Act.**
3

4        The Unruh Civil Rights Act provides that "[a]ll persons within the jurisdiction of this state

5    are free and equal, and no matter what their ... disability ... are entitled to the full and equal

6    accommodations, advantages, facilities, privileges, or services in all business establishments of

     every kind whatsoever."  42 U.S.C. § 51(b).
7
         Plaintiff's Unruh Act claim fails because she has not alleged any facts establishing that
8
     Defendants acted with discriminatory intent.  A violation of the Unruh Act may be maintained
9
     *independent* of an ADA claim[4] only where a plaintiff pleads facts to establish "intentional
10
     discrimination in public accommodations in violation of the terms of the Act."  *Young*, 790 F.
11
     Supp. 2d at 1116 (finding plaintiff did not allege facts from which intentional discrimination
12
     could be inferred where she claimed that Facebook discriminated against her by using automated
13
     responses rather than humans to assist individuals).  To prove intentional discrimination, there
14
     must be allegations of "willful, affirmative misconduct," and the plaintiff must "allege more than
15
     the disparate impact of a facially neutral policy on a particular group."  *Cullen*, 880 F. Supp. 2d
16
     1017 at 1024 (finding allegations that Netflix did not caption streaming library insufficient to
17
     support Unruh Act claim without facts establishing intentional discrimination).
18
         Here, Plaintiff has not pled any facts establishing that Defendants engaged in "willful,
19
     affirmative misconduct."  Rather, Plaintiff's bare assertion that "Defendants acted with
20
     discriminatory intent" is precisely the kind of legal conclusion that is insufficient to state a claim.
21
     *C.B.*, 691 F. Supp. 2d at 1153 (dismissing plaintiff's Unruh Act claims where "allegations that
22
     [defendant's] conduct was discriminatory [were] legal conclusions").  To satisfy the "intentional
23
     discrimination" requirement, Plaintiff must allege facts establishing intent, such as why
24

25   ─────────────────────
     [4] "Although the California Supreme Court recognizes an exception to the requirement of
26   discriminatory intent where an Unruh Act claim is based on a purported violation of the ADA,"
     Plaintiff cannot rely on that exception here because her ADA claim fails, *see supra* IV.A.2.
     *Moore v. Equity Residential Mgmt., LLC*, 2019 WL 5697934, at *8 (N.D. Cal. Nov. 3, 2019).
27   Moreover, if Plaintiff is asserting that her Unruh Act claim is based on her ADA claim, "the
     deficiencies of the present ADA claim would apply" to her Unruh Act claim, thus requiring its
28   dismissal.  *See Clavon v. TSAY JBR, Inc.*, No. 2:10–CV–05673–JHN–PLAx, 2010 WL 11601827,
     at *4 (C.D. Cal. Oct. 21, 2020).

Defendants "treated her differently *because* of her disability," or how "[Meta] applies its policies in a way that *targets* individuals with disabilities." *Young*, 790 F. Supp. 2d at 1116 (dismissing Unruh Act claim where Plaintiff alleged that Facebook's customer service was difficult for her, but not that Facebook treated her differently because of her bipolar disorder).[5]  Because Plaintiff *still* provides no facts demonstrating intentional discrimination, Plaintiff's ADA claim must be dismissed with prejudice.

### 5.        Plaintiff fails to state a claim for fraud.

Under California law, the "indispensable elements of a fraud claim include a false representation, knowledge of its falsity, intent to defraud, justifiable reliance, and damages." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1105 (9th Cir. 2003).  Fraud is subject to the "heightened pleading standards of Rule 9(b)."  *See Gray v. Preferred Bank*, 2010 WL 11508777, at *3 (S.D. Cal. June 10, 2020).  A pleading will be "sufficient under Rule 9(b) if it identifies the circumstances of the alleged fraud so that the defendant can prepare an adequate answer." *Fecht v. Price Co.*, 70 F.3d 1078, 1082 (9th Cir. 1995).  Thus, "[a]verments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged.'" *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (citation omitted).  Plaintiff has asserted claims for both fraud and intentional misrepresentation.  "Intentional misrepresentation is a claim for fraud." *Lintz v. Bank of America, N.A.*, No.: 5:13–CV–01757–EJD, 2013 WL 5423873, at *5 (N.D. Cal. Sept. 27, 2013).  Therefore, "the Court shall consider the two causes of action as one." *Id*   Plaintiff's conclusory allegations do not identify the circumstances of the alleged fraud under the heightened pleading standards of Rule 9(b).

*First*, Plaintiff does not identify a single specific false representation made by Defendants as Rule 9(b) requires.  Plaintiff provides a laundry list of Meta's supposed "statements," without identifying a source for the statements, why the statements were false, or that the statements were

---

[5] Moreover, the fact that Plaintiff purportedly only encountered accessibility issues starting in 2020 contradicts any argument that Defendants denied her access to the Facebook platform *because of her disability*—indeed, any alleged barrier would have been present long before Plaintiff had an issue accessing the Facebook platform.  FAC ¶ 20; *see, e.g.*, *Earll*, 599 Fed. Appx. at 696 (finding eBay's failure to provide a "deaf-accessible alternative to its aural identification system" to all users did not amount to willful, affirmative misconduct sufficient to constitute intentional discrimination under the Unruh Act).

even statements of fact, which they are not.  FAC ¶¶ 22-23; *see also Lapping v. Wyndham Vacation Ownership, Inc.*, No. 19-cv-07549, 2020 WL 6381355 *7 (N.D. Cal. October 29, 2020) (finding defendants' "aspirational commitments [in corporate defendant's code of conduct] […] are not statements of fact").  For example, Plaintiff asserts that "Facebook states they are committed to making [F]acebook a safe place," but she does not identify (1) the source for the statement, which does not appear in the Terms of Use, (2) why the statement is false, or (3) how the statement constitutes a promise, rather than an "aspirational commitment []."  *Id.*; FAC ¶ 22; *see, e.g.*, *Ahern v. Apple Inc.*, 411 F. Supp. 3d 541, 559 (N.D. Cal. 2019) (dismissing fraud claim where plaintiff pled that Apple's marketing statements were false and misleading, but not *why* they were false and misleading).

     *Second*, even if Plaintiff had identified any specific false statements, she does not allege that Defendants *intended* to defraud her with those statements.  Plaintiff's conclusory allegation that statements supposedly made in Meta's Terms of Service constitute "fraudulent and intentional misrepresentation[s]" is insufficient to show that Defendants made those statements with any intent to defraud—*or, again, even that those statements were false*—at the time the statements were made.  FAC ¶¶ 22-23; *see, e.g.*, *Herskowitz v. Apple, Inc.*, 940 F. Supp. 2d 1131, 1147 (N.D. Cal. 2013) (dismissing fraud claim where statement that Apple intended to mislead Plaintiff with representations about products provided no basis to infer that Apple made those statement with intent to defraud).  Moreover, the FAC reformulates Plaintiff's breach of contract claim as a fraud claim, relying entirely on statements supposedly contained in the Terms of Service.  *Compare* FAC ¶ 22 *with* ¶ 38.  Even assuming Plaintiff's allegations were sufficient to support her breach of contract claim (they are not), alleging breach is "as a matter of law insufficient give rise to an inference that [Defendants] acted with fraudulent intent."  *Sunnyside Development Co. v. Opsys Ltd.*, No. C 05-0553, 2005 WL 1876106 *5 (N.D. Cal. Aug. 8, 2005).

     *Third*, Plaintiff does not adequately allege how her reliance on any specific representations caused her harm.  "To adequately plead reliance, a plaintiff must establish a causal relationship between the alleged misrepresentation and the resulting harm."  *Sukonik v. Wright Medical Tech. Inc.*, No. CV 14–08278 BRO (MRWx), 2015 WL 10682986, at *15 (C.D.

Cal. Jan. 26, 2015).  Plaintiff's conclusory allegations regarding reliance—that she "relied on Defendants' statements," that "any reasonable person would rely on Defendants statements," and that she was "harmed by the reliance"—are insufficient to support a claim for fraud, particularly under the heightened pleading standards of Rule 9(b).  *See, e.g.*, *Herskowitz v. Apple, Inc*., 940 F. Supp. 2d at 1147 (finding conclusory statement that Plaintiff "did reasonably rely on [] misrepresentations" insufficient under heightened standard for fraud).

*Lastly*, Plaintiff's fraud claim fails for the independent reason that it is barred by the statute of limitations.  The statute of limitations for a fraud claim is three-years.  Cal. Civ. Pro. § 338(d).  "As a general rule, the limitations period in a case is not deemed to have accrued until the discovery, by the aggrieved party, of the facts constituting the fraud or mistake." *Gomez v. Nationstar Mortg*., LLC, 2015 WL 966224, at *5 (E.D. Cal. March 4, 2015).  The crux of Plaintiff's fraud claim is that Defendants have allegedly allowed users to harass and bully her "for 5 plus years after being made aware of this in 2016."  FAC ¶ 26.  By her own allegations, Plaintiff discovered the facts constituting the alleged fraud in 2016.  Plaintiff filed the original complaint well over two years after she discovered the alleged fraud, on December 29, 2021. Plaintiff's fraud claim is thus time-barred and must be dismissed with prejudice.

### 6.      Plaintiff fails to state invasion of privacy claims under the California Constitution or the common law.

#### a.      Plaintiff fails to state a constitutional invasion of privacy claim.

To establish an invasion of privacy claim under Article 1, Section 1 of the California Constitution, a plaintiff must demonstrate: "(1) a legally protected privacy interest; (2) a reasonable expectation of privacy in the circumstances; and (3) conduct by defendant constituting a serious invasion of privacy."  *In re Google Location History Litig.*, 428 F. Supp. 3d 185, 196 (N.D. Cal. 2019).  "Actionable invasions of privacy must be sufficiently serious in their nature, scope, and actual or potential impact to constitute an egregious breach of the social norms underlying the privacy right."  *Id.*  Plaintiff's allegations are insufficient to sustain this claim.

*First*, Plaintiff's claim should be dismissed because, by using the Facebook platform, she consented to Meta's Terms of Service, which disclosed the purported "tracking" activity Plaintiff alleges in her Complaint.  *Smith v. Facebook, Inc*., 262 F. Supp. 3d 943, 955-956 (N.D. Cal.

2017), *aff'd*, 745 F. Appx. 8 (9th Cir. 2018) (dismissing plaintiffs' privacy claims because "consent … bars [plaintiffs'] common-law tort claims and their claim for invasion of privacy under the California Constitution"); *Kent v. Microsoft Corp*., No. SACV13-0091 DOC ANX, 2013 WL 3353875, at *6 (C.D. Cal. July 1, 2013) (granting defendant's motion to dismiss because "plaintiffs generally may not assert a wrong arising out of an action which they consented to").  A user consents to activities disclosed in a website's privacy notice when she uses the website with at least "constructive knowledge of [the] website's terms and conditions." *Dohrmann v. Intuit, Inc*., 823 F. App'x 482, 483-84 (9th Cir. 2020).  Constructive knowledge exists where the website "put[s] 'a reasonably prudent user on inquiry notice'" of the terms. *Stripe*, 2021 WL 3191752, at *3.  Just such consent is present here.

At the crux of Plaintiff's privacy claims are allegations that (1) "Facebook continues to track" her without permission when she is "not logged into Facebook and is using other third party sites such as Chewy.com, Target.com, etc.," and (2) "the minute she logs back into her Facebook account, ads from these other third party sites immediately show up on" the Facebook platform.  FAC ¶¶ 30-31.  However, by using the Facebook platform, Plaintiff consented to Meta's Terms of Service and Data Policy, which disclosed that Meta's partners may provide information about Plaintiff's activities "off of [Meta's] products"—including information about the websites Plaintiff visits—***whether or not Plaintiff is logged into Meta's Facebook platform,*** and while using third-party sites.  Heath Decl. ISO Meta's RJN, Ex. B; *see, e.g.*, *Davidson v. Hewlett-Packard Co.*, No. 5:16-cv-01928, 2021 WL 4222130 *5 (N.D. Cal. Sept. 16, 2021) (dismissing invasion of privacy claim where plaintiff consented to the activity because "[i]f voluntary consent is present, a defendant's conduct will rarely be deemed 'highly offensive to a reasonable person' so as to justify tort liability"); *Perkins v. LinkedIn Corp*., 53 F. Supp. 3d 1190, 1212 (N.D. Cal. 2014) (holding LinkedIn users consented to having email addresses collected from users' contact lists).  Plaintiff asserts that she "never gave Facebook any permission to track her while she is on her computer or any other electronic device and not logged into Facebook." FAC ¶ 28.  But that is contrary to the Terms of Use and Data Policy, both of which Plaintiff agreed to.  And the court in *Smith*—in a situation nearly identical to the one here—rejected

plaintiffs' argument that they did not consent to Meta's tracking activity when they signed up for

and agreed to the Data Policy because "plaintiffs acknowledge[d] in their complaint that the

Facebook policies, including the Data Policy and the Cookie Policy, "constituted a valid

contract," and relied on Facebook's assertions to support their fraud claim. *Smith*, 262 F. Supp.

3d at 953.  Having alleged that she understood and relied on the Terms of Service[6] to support her

FAC, Plaintiff cannot now "claim to be ignorant of [its] contents." *Id.* at 954.

    *Second*, Plaintiff has failed to plead facts sufficient to show that she has a legally

protected privacy interest under the circumstances alleged.  The California Supreme Court has

explained that "[l]egally recognized privacy interests are generally of two classes: (1) interests in

precluding the dissemination or misuse of sensitive and confidential information ('informational

privacy'); and (2) interests in making intimate personal decisions or conducting personal

activities without observation, intrusion, or interference ('autonomy privacy')." *In re Google*

*Assistant Priv. Litig.*, 457 F. Supp. 3d at 829 (finding Plaintiffs did not show that they had a

privacy interest in the conversations upon which Defendants allegedly intruded because they did

not allege sufficient information about the conversations at issue).  Here, Plaintiff alleges that her

information is "sensitive, and confidential and relates to personal decisions or personal activities."

*See* FAC ¶ 34.  These conclusory assertions do not give rise to an inference that there is a legally

protected privacy interest in her decisions regarding Chewy.com or Target.com.  *See In re Google*

*Location History Litigation*, 428 F. Supp. 3d 185 (N.D. Cal. 2019) (granting motion to dismiss

where plaintiff's allegations of privacy interest in "sensitive and confidential" information were

too conclusory).

    *Third*, Plaintiff fails to allege that she had a reasonable expectation of privacy under the

circumstances.  A "reasonable expectation of privacy is an objective entitlement founded on

broadly based and widely accepted community norms," and the decision must consider "advance

---

[6] Meta's Terms of Service incorporate the Data Policy. Heath Decl. ISO Meta's RJN, Ex. A ("We collect and use your personal data in order to provide the services described above to you. You can learn about how we collect and use your data in our Data Policy…"); *See In re Facebook, Inc., Consumer Privacy User Profile Litig.*, 402 F. Supp. 3d 767, 791 (N.D. Cal. 2019) (finding that Facebook's Terms of Service "incorporate the Data Use Policy into the contractual agreement between Facebook and its users.").

notice to [Plaintiff]…, and whether [Plaintiff] had the opportunity to consent or reject the very thing that constitutes the invasion."  *Gonzalez v. Uber Techs., Inc.*, 305 F. Supp. 3d 1078, 1091 (N.D. Cal. 2018) (finding Lyft driver did not have a reasonable expectation of privacy in his data because reasonable Lyft drivers expect home address will be shared and Plaintiff consented to the activity).  Here, Plaintiff does not plead facts establishing that her expectation of privacy "when she logged out of Facebook doing other personal things," including using Chewy.com and Target.com, was objectively reasonable under the circumstances, considering Plaintiff consented to Meta's Terms of Use and Data Policy, which disclosed the complained-of activity.  Heath Decl. ISO RJN, Ex. B; *see, e.g.*, *Zbitnoff*, 2014 WL 1101161, at *3 (noting that plaintiff in invasion of privacy action "must not have manifested by his or her conduct a voluntary consent to the invasive actions of the defendant").[7]

*Fourth*, Plaintiff fails to allege that Defendants' conduct constituted a serious invasion of privacy.  The California Constitution sets a high bar for an invasion of privacy claim.  Even disclosure of social security numbers does not constitute an "egregious breach of the social norms" to establish invasion of privacy.  *Low*, 900 F. Supp. 2d at 1025 (finding no serious invasion of privacy where defendant disclosed user browsing history coupled with digital identification info to third parties in violation of its policies).  Courts consistently dismiss invasion of privacy claims based on online company practices involving user data collection. *See, e.g.*, *In re Google, Inc. Priv. Policy Litig.*, 58 F. Supp. 3d 968, 988 (N.D. Cal. 2014) (no intrusion claim based on Google's disclosure of users' data to third-party developers, "contrary to

---

[7] In her amended complaint, Plaintiff now raises the fact that Meta was party to a settlement involving purportedly similar claims as she alleges here.  FAC ¶ 29; *see In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589 (9th Cir. 2020).  This is irrelevant to Plaintiff's claims and the present motion given Plaintiff does not allege she is a member of that settlement class, which involved "people who had active Facebook accounts between May 27, 2010 and September 26, 2011." *Id.* at 597; *Minor v. County of Los Angeles*, 2015 WL 13711269, at *3 (C.D. Cal. 2015) ("Evidence of settlements and settlement offers is specifically considered irrelevant for purposes of establishing liability."). In any event, *In re Facebook, Inc. Internet Tracking Litigation* is distinguishable.  At that time, the Data Policy did not disclose that Meta would engage in the behavior at issue when users were logged off of Facebook. The court considered this a "critical fact."  *In re Facebook, Inc. Internet Tracking, Litig.*, 956 F.3d at 603 (observing that, in analogous data privacy cases, "the critical fact was that the online entity represented to the plaintiffs that their information would not be collected, but then proceeded to collect it anyway").  The Data Policy currently at issue expressly states that Meta would receive information on users' activity on and off of Facebook.  See Heath Decl. ISO RJN, Ex. B.

Google's own policies," where the Northern District "sets a high bar for the requisite intrusion");

*In re iPhone Application Litig.*, 844 F. Supp. 2d 1040, 1063 (N.D. Cal. 2012) (finding no invasion

of privacy based on defendants' disclosure of users' information where information was

transmitted without plaintiffs' knowledge and consent).  Plaintiff simply states that when she logs

onto the Facebook platform after using other sites, "ads from these other third party sites

immediately show up on [her] facebook account."  FAC ¶ 31.  Plaintiff does not sufficiently

allege facts establishing that this relatively "routine commercial behavior" is an "egregious

breach of social norms" under the circumstances.[8]  Accordingly, this claim fails as a matter of

law.

### b.   Plaintiff fails to state a claim for common law invasion of privacy

To support her common law invasion of privacy claim, Plaintiff asserts that Defendants

are liable for allowing users to post information about her address, disability, and medical

condition.  FAC ¶ 36.  To state a claim for public disclosure of private facts under California

law,[9] a plaintiff must allege "(1) public disclosure, (2) of a private fact, (3) which would be

offensive and objectionable to the reasonable person, and (4) which is not of legitimate public

concern." *Taus v. Loftus*, 40 Cal. 4th 683, 717 (2007).

Here, Plaintiff has failed to allege that the disclosure of her information would be

offensive and objectionable to a reasonable person in these circumstances.  This element is

satisfied where the alleged disclosure would "shock the community's notions of decency."

*Banga v. Equifax Information Servs.* LLC, No. 14–cv–03038–WHO, 2015 WL 3799546, at *9

(N.D. Cal. June 18, 2015) (dismissing invasion of privacy claim where Plaintiff did not explain

---

[8] As discussed *supra* IV.A.6.a, Plaintiff consented to Defendants' activity.

[9] Although it is still unclear from the FAC whether Plaintiff intended to allege "intrusion upon seclusion" or "public disclosure of private facts," as the additional allegations in ¶ 37 involve disclosure of Plaintiff's information on the Facebook platform, Defendants assume Plaintiff intended to state a claim for public disclosure of private facts.  Additionally, the FAC includes near-identical allegations relating to Meta's alleged tracking activity under the common law invasion of privacy claim as for Plaintiff's constitutional invasion of privacy claim.  *Compare* FAC ¶ 29 *with* ¶ 34.  Thus, to the extent Plaintiff attempts to allege a claim for "intrusion upon seclusion" for the tracking activity discussed above, the claim should be dismissed for the same reasons.  *In re Google Assistant Priv. Litig.*, 457 F. Supp. 3d 797, 829 (N.D. Cal. 2020) (because the standards for common law intrusion upon seclusion and constitutional invasion of privacy "are closely related," courts "treat[] them together").

why disclosure of credit report information was offensive).  In other cases involving the disclosure of private information, courts have dismissed invasion of privacy claims where the plaintiff did not clearly allege facts on why the disclosure was offensive and objectionable.  *See, e.g.*, *Belluomini v. Citigroup, Inc.*, No. CV 13-01743, 2013 WL 3855589, at *7 (July 24, 2013 N.D. Cal. 2013) (dismissing invasion of privacy claims where defendant divulged and allowed a third party to access plaintiff's SSN information information); *Four Navy Seals v. Associated Press*, 413 F.Supp.2d 1136, 1145 (C.D. Cal. 2005) (noting that "a newspaper's publishing of photographs of an undercover narcotics officer was not outrageous behavior, even if the publication jeopardized the officer's safety and efficacy").  Here, Plaintiff makes general allegations that do not explain how or why the disclosure of her information would "shock the community's notions of decency."  *Hogan v. Weymouth*, No. CV 19-2306-MWF (AFMx), 2020 WL 8028111, at *10 (C.D. Cal. Nov. 12, 2020) (dismissing invasion of privacy claim for disclosure of fact that Plaintiff had made derogatory statements); *Hassan v. Facebook, Inc.*, 2019 WL 3302721 (dismissing public disclosure of private facts claim where plaintiff made "factually conclusory" allegations about privacy of information and failed to plead whether Facebook acted with knowledge or reckless disregard of the fact that a reasonable person would consider the publicity highly offensive); *see* FAC ¶ 37.  Accordingly, Plaintiff's common law invasion of privacy claim should be dismissed with prejudice.[10]

### 7.   Plaintiff fails to state a claim for breach of contract.

To plead a claim for breach of contract under California law, a plaintiff must allege: "(1) existence of the contract; (2) plaintiff's performance or excuse for nonperformance; (3) defendant's breach; and (4) damages to plaintiff as a result of the breach."  *Appling v. Wachovia Mortg., FSB*, 745 F. Supp. 2d 961, 974 (N.D. Cal. 2010).

Plaintiff's breach of contract claim seeks to hold Defendants liable for the conduct of

---

[10] In addition, California courts have held that Meta's Terms of Service preclude similar claims for public disclosure of private facts.  In *Caraccioli*, the court determined that because Meta's Terms of Service disclose that Meta does not "control or direct" users' actions on the Facebook platform, plaintiff could not state a claim for public disclosure of private facts, which "presume[s] a publication made by the defendant."  *Caraccioli v. Facebook, Inc.*, 167 F. Supp. 3d 1056, 1064 (N.D. Cal. 2016), *aff'd*, 700 F. App'x 588 (9th Cir. 2017); Heath Decl. ISO RJN, Ex. A, Section 3.

third-party users.  She alleges that Defendants do not "take action" after being made aware of violations by third parties.  FAC ¶ 39.  Plaintiff provides a list of Defendants' requirements for users, including that "you may not violate the Community Standards," as well as Defendants' supposed commitments, including that "they are committed to protecting privacy and information."  FAC ¶ 38.  Even accepting the allegations as true, the FAC fails to state any plausible claim for breach of contract.

The FAC *still* fails to identify a specific provision in a contract with Plaintiff that Defendants have violated.  "To properly plead breach of contract, '[t]he complaint must identify the specific provision of the contract allegedly breached by the defendant.'"  *Caraccioli*, 167 F. Supp. 3d at 1064; *see also Young*, 790 F. Supp. 2d at 1117 (noting plaintiff must allege the specific provisions in the contract creating the obligation the defendant is said to have breached). Plaintiff merely provides a list of statements that Defendants allegedly made, without identifying the specific contractual source.  *See e.g.*, FAC ¶ 38 ("alleging that Defendants "state[] that people will respect the dignity of others and not harass or degrade others," and that Defendants are "committed to making Facebook a safe place and expression that threatens people has a potential to intimidate, exclude or silence others is not allowed").  This is insufficient to state a claim for breach of contract.  *See, e.g.*, *Ebeid v. Facebook, Inc.*, 2019 WL 2059662, at *7 (N.D. Cal. May 9, 2019) (dismissing breach of contract claim because plaintiff failed to identify specific provision of the contract breached by defendant); *King v. Facebook, Inc.*, No. 19-cv-01987-WHO, 2019 WL 6493968, at *2 (N.D. Cal. Dec. 3, 2019) (same).

In fact, there are no such contractual provisions.  Meta's Terms of Service do not require Defendants to remove the complained-of content or users.  *See* Heath Decl. ISO RJN, Ex. A ("We *can* remove or restrict access to content that is in violation of these provisions") (emphasis added).[11]  Thus, Defendants' failure to "take action" and remove the alleged content cannot give

---

[11] In fact, as noted above (*see* Section IV.A.6.b, *supra*), Meta's Terms of Service disclaim liability for third-party conduct.  *See* Heath Decl. ISO RJN, Ex. A, Section 3 ("we do not control or direct what people and others do or say, and we are not responsible for their actions or conduct (whether online or offline) or any content they share including offensive, inappropriate, obscene, unlawful, and other objectionable content"); *see, e.g.*, *Caraccioli*, 167 F. Supp. 3d at 1063 (finding claims for breach of contract, NIED, and public disclosure of private facts failed because Meta disclaimed liability for third-party users' actions).

rise to liability for breach of contract.  *See Ebeid*, 2019 WL 2059662, at *7 (dismissing breach of contract claim because "plaintiff does not allege that Facebook failed to perform its obligations under the contract").  Courts have rejected similar contract claims based on Meta's Terms of Service.  That is because, "while [Meta's] Terms of Service 'place restrictions on users' behavior,' they 'do not create affirmative obligations'" by Meta to remove content from its platform.  *Caraccioli*, 167 F. Supp. 3d at 1064; *King*, 2019 WL 6493968, at *2 ("[T]here is nothing in the Terms of Use or other contract identified by King that could plausibly support a breach claim."); *see also Goddard v. Google, Inc.*, 640 F. Supp. 2d 1193, 1201 (N.D. Cal. July 30, 2009) (dismissing breach of contract claim because agreement did not "contain[] any promise by Google to enforce its terms of use").  Accordingly, Plaintiff fails to state a claim for breach of contract.[12]

### 8.   Plaintiff fails to state a claim for negligence or negligent infliction of emotional distress.

"Negligent infliction of emotional distress ['NIED'] is a species of negligence, which under California law has three elements: (1) that defendant owed a legal duty to use due care, (2) a breach of that duty, and (3) the breach was the proximate or legal cause of the resulting injury." *Caraccioli*, 167 F. Supp. 3d at 1064 (citing *Huggins v. Longs Drugs Stores Cal*., Inc., 6 Cal. 4th 124, 129 (1993); *Wong v. Jing*, 189 Cal. App. 4th 1354, 1377 (2010) (NIED is "not an independent tort but the tort of negligence to which the traditional elements of duty, breach of duty, causation and damages apply.").

*First*, Plaintiff has failed to allege that Defendants owed her any relevant duty.  It is Plaintiff's burden to plead facts establishing the existence of a duty.  *See Tuttle v. Chase Ins. Life & Annuity Co*., 2007 WL 2790359, at *3-4 (N.D. Cal. Sept. 20, 2007).  Plaintiff fails to allege that Defendants owed her any duty that is recognized under the law, much less any facts that would establish the existence of such a duty.  *See* FAC ¶ 42; *Young*, 790 F. Supp. 2d at 1119

---

[12] Plaintiff attempts to support her clearly deficient breach of contract claim by raising irrelevant, prejudicial, and inflammatory facts about Meta.  *See* FAC ¶ 39.  These allegations must be ignored—they do not support any element of Plaintiff's breach of contract claim, nor do they involve Plaintiff.

(dismissing negligence claim where Plaintiff did not identify any contractual or other basis that Facebook owed her any duty involving deletion of her account); *Caraccioli*, 167 F. Supp. 3d at 1064 (finding Facebook did not owe Plaintiff any duty to avoid causing emotional distress). Plaintiff's bare assertion that "everybody has a duty not to harm anybody else" is insufficient and patently untrue in these circumstances, where Meta's only alleged duty was to protect Plaintiff from "the conduct of third part[y]" Facebook platform users. *Melton v. Boustred*, 183 Cal. App. 4th 521, 535 (2010) ("[A]s a general rule, 'an actor is under no duty to control the conduct of third parties'"); *see, e.g.*, *Doe No. 1 v. Uber Technologies, Inc.*, No. 310131, 2022 WL 1769112 (N.D. Cal. June 1, 2022) (holding Uber did not have a duty to protect plaintiffs from third-party conduct where there was no special relationship in their contract to protect from third-party harm).

Moreover, Plaintiff claims that she suffered "emotional distress damages" because of Defendants' negligent conduct.  But under California law, there is no duty to avoid negligently causing emotional distress to another.  *Potter v. Firestone Tire & Rubber Co.*, 6 Cal. 4th 965, 985 (1993) ("[U]nless the defendant has assumed a duty to plaintiff in which the emotional condition of the plaintiff is an object, recovery is available only if the emotional distress arises out of the defendant's breach of some other legal duty and the emotional distress is proximately caused by that breach of duty.").  Here, Plaintiff has not alleged that Defendants owed her any special duty, much less one relating to her emotional condition.  Moreover, if the FAC's theory is that a duty to Plaintiff arises out of Meta's Terms of Service, courts have rejected that theory because a contractual duty cannot on its own serve as the basis for a tort claim.  *See Erlich v. Menezes*, 21 Cal. 4th 543, 551 (1999) (holding "conduct amounting to a breach of contract becomes tortious only when it also violates a duty independent of the contract arising from principles of tort law"); *see, e.g.*, *Caraccioli*, 167 F. Supp. 3d at 1064 (holding that plaintiff could not base claims for NIED on Meta's Terms of Service).  And, as discussed further above, the contract that Plaintiff agreed to does not require Defendants to remove offending content.

*Second*, Plaintiff has failed to allege cognizable damages in negligence.  In California, emotional distress damages typically are not allowed where there is no actual physical impact or

1   injury. *Butler-Rupp v. Lourdeaux*, 134 Cal. App. 4th 1220, 1229 (2005). The specialized class of

2   cases where emotional distress damages may be allowed include, for example, "where a

3   defendant mishandled the cremated remains of a plaintiff's brother, a doctor negligently advised a

4   plaintiff's wife that she suffered from syphilis, where the defendant owed the plaintiff fiduciary or

5   quasi-fiduciary duties, and where a plaintiff witnessed injury to a close relative." *Kasramehr v.*

6   *Wells Fargo Bank N.A.*, No. CV 11–0551 GAF (OPx), 2011 WL 12473383, at *10 (C.D. Cal.

7   May 18, 2011). Plaintiff has not alleged anything of the sort.

8        **B.    Section 230 Of The Communications Decency Act Independently Bars Meta's**
         **Liability For Fraud, Invasion Of Privacy, Breach Of Contract, Negligence,**
9        **And Negligent Infliction Of Emotional Distress Claims.**

10       Even if Plaintiff had pled facts sufficient to state a claim against Defendants—which she

11   has not—her claims for fraud, common law invasion of privacy, breach of contract, negligence,

12   and negligent infliction of emotional distress still fail for the independent reason that they are

13   barred as a matter of law under Section 230(c)(1) of the Communications Decency Act, 47 U.S.C.

14   § 230 *et seq.* Section 230 "protects certain internet-based actors from certain kinds of lawsuits."

15   *Barnes v. Yahoo!, Inc.*, 570 F.3d 1096, 1099 (9th Cir. 2009). Thus, it "establish[es] broad federal

16   immunity to any cause of action that would make service providers liable for information

17   originating with a third-party user of the service." *Perfect 10, Inc. v. CCBill LLC*, 481 F.3d 751,

18   767 (9th Cir. 2007) (internal quotations and citations omitted), *opinion amended and superseded*

19   *on denial of reh'g*, 488 F.3d 1102 (9th Cir. 2007).

20       Crucially, Section 230 bars claims based on a service provider's decisions about

21   "reviewing, editing, and deciding whether to publish or to withdraw from publication third-party

22   content"—the same claims Plaintiff alleges here. *Barnes*, 570 F.3d at 1102 (holding Section 230

23   immunized any "activity that can be boiled down to deciding whether to exclude material that

24   third parties seek to post online"); *see, e.g.*, *King*, 2020 WL 4221768, at *3–4 (holding that

25   Section 230 protected websites "regardless of their moderation process").

26       Under Section 230(c)(1), a claim should be dismissed if (1) the defendant is a

27   "provider . . . of an interactive computer service[;]" (2) the allegedly offending content was

28   "provided by another information content provider[;]" and (3) Plaintiffs' claims treat the

defendant as the "publisher" of that content. 47 U.S.C. § 230(c)(1); *Sikhs for Justice, Inc. v. Facebook, Inc.*, 144 F. Supp. 3d 1088, 1093 (N.D. Cal. 2015).  Plaintiff's claims for fraud, common law invasion of privacy, breach of contract, negligence, and negligent infliction of emotional distress meet all three of these elements.

### 1.    Meta is an interactive computer service provider.

Section 230 defines an interactive computer service provider as "any information service, system, or access software provider that provides or enables computer access by multiple users to a computer server."  47 U.S.C. § 230(f)(2).  California and federal courts have uniformly held that Meta meets Section 230's "interactive computer service" definition.  *See, e.g.*, *Cross v. Facebook, Inc.*, 14 Cal. App. 5th 190, 206 (2017); *Calise v. Meta Platforms, Inc.*, No. 21-cv-06186-JSW, 2022 WL 1240860, at *2 (N.D. Cal. April 27, 2022); *Fed. Agency of News LLC*, 432 F. Supp. 3d at 1117; *Ebeid*, 2019 WL 2059662, at *3.

### 2.    The content was provided by another information content provider.

The information for which Plaintiff seeks to hold Defendants liable must come from an "information content provider" that is not Defendants.  47 U.S.C. § 230(c)(1).  Here, Plaintiff's claims for fraud, common law invasion of privacy, breach of contract, and negligence involve allegations that Facebook platform users—*not* Defendants—created and posted the content at issue.  *See generally* FAC. There are no allegations that Defendants provided or otherwise contributed to any of the content at issue in these claims.  Accordingly, Section 230(c)(1)'s second requirement is met.  *See Igbonwa*, 2018 WL 4907632, at *6 (finding user's offensive content was created by "another content provider").

### 3.    Plaintiff's claims seek to treat Defendants as a "publisher."

Under Section 230, a plaintiff's claim treats a defendant as a "publisher" when it seeks to hold a service provider liable for its purported exercise of "editorial functions"—such as "deciding whether to publish, withdraw, postpone or alter content."  *Barnes*, 570 F.3d at 1102. What matters here is not the "name of the cause of action," but "whether the duty that the plaintiff alleges the defendant violated derives from the defendant's status or conduct as a 'publisher or speaker.'  If it does, Section 230(c)(1) precludes liability."  *Id.*; *see, e.g.*, *Caraccioli*, 167 F. Supp.

3d at 1065 (dismissing breach of contract and NIED under Section 230); *Igbonwa*, 2018 WL 4907632 at \*7; *A.B. v. Facebook, Inc.*, 2021 WL 2791618 at \*3 (C.D. Cal. June 1, 2021); *Cross v. Facebook, Inc.*, 14 Cal. App. 5th 190, 206 (2017); *Jurin v. Google, Inc.*, 695 F. Supp. 2d 1117, 1122–23 (E.D. Cal. 2010).

Here, Plaintiff's fraud, common law invasion of privacy, breach of contract, negligence, and NIED claims all seek to treat Defendants as the publisher or speaker of the posts at issue. Plaintiff's fraud claim is premised on Defendants' inaction involving users allegedly harassing and threatening posts on the Facebook platform. FAC ¶¶ 21-26. Plaintiff's common law invasion of privacy claim is premised on the Complaint's assertion that Defendants published (via third party users) Lloyd's private information, such as her home address. FAC ¶ 37. Plaintiff's breach of contract claim is again premised on Defendants' inaction involving users' allegedly harassing and threatening posts, published on the Facebook platform. FAC ¶¶ 38-40. Finally, Plaintiff's negligence and NIED claims are premised on the fact that Defendants allegedly "allowed" publication of various statements on the Facebook platform. FAC ¶¶ 41-42. In short, Plaintiff alleges that Defendants failed to take appropriate measures against users—and this is just the sort of claim that courts consistently deem protected publisher activity. *See, e.g.*, *Caraccioli*, 167 F. Supp. 3d at 1066 (dismissing claims premised on Facebook's alleged failure to remove content); *Igbonwa*, 2018 WL 4907632 at \*6 (dismissing claim premised on the theory that Facebook wrongly permitted and then failed to remove third-party posts). Accordingly, dismissal is required under Section 230(c)(1).[13]

### C.    Plaintiff Should Not Be Granted Leave To Amend.

Plaintiff has already amended her complaint at least once with knowledge of the deficiencies Defendants identified in the original complaint—and Plaintiff has failed to cure them. Leave to amend is inappropriate if "the pleading could not possibly be cured by the

---

[13] Plaintiff asserts that Section 230 does not shield online companies from legal liability associated with a third-party user when the posts involve harassment or criminal activity. FAC ¶ 39. On the contrary, courts have consistently held that Section 230 bars claims for Meta's failure to remove precisely this type of content. *See, e.g.*, *Cross v. Facebook, Inc.*, 14 Cal. App. 5th 190, 206 (2017) (finding that the CDA barred claims based on Meta's failure to remove content which "incited violence and generated death threats against" plaintiff).

allegations of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (*en banc*).  Here, leave to amend would be inappropriate for two reasons.

   *First*, as established above (*see supra* IV.A), Plaintiff has failed to allege sufficient facts to state any claim in both her original complaint or FAC and proposes no additional facts that could be pled in a second amended complaint to assist her claims.

   *Second,* multiple of Plaintiff's claims will be barred by Section 230(c)(1) no matter what additional facts she pleads (*see supra* IV.B)—which is why courts generally deny leave to amend when there is CDA immunity, which cannot be "circumvent[ed]" with "creative pleading." *Kimzey v. Yelp! Inc.*, 836 F.3d 1263, 1265-66 (9th Cir. 2016); *see, e.g.*, *King*, 2021 WL 5279823, at *13 (dismissing claims barred by Section 230 with prejudice because "it would be futile for [Plaintiff] to try to amend the claim[s]"); *Brittain*, 2019 WL 2423375, at *4 (dismissing claims barred by Section 230 with prejudice "[b]ecause plaintiff cannot cure this defect").  It is thus apparent that "any proposed amendment would be futile" and that the Court should dismiss with prejudice. *Reddy v. Litton Indus., Inc.*, 912 F.2d 291, 296 (9th Cir. 1990).

## V. CONCLUSION

   For the foregoing reasons, Defendants respectfully requests that the Court dismiss the FAC with prejudice.

Dated:  June 14, 2022       ORRICK, HERRINGTON & SUTCLIFFE LPP

           By: */s/ Jacob M. Heath*
             JACOB M. HEATH

             Attorney for Defendant
             META PLATFORMS, INC.