UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SUSAN LLOYD,<br><br>        Plaintiff,<br><br>    v.<br><br>FACEBOOK, INC., et al.,<br><br>        Defendants. | Case No. 21-cv-10075-EMC<br><br>**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS THIRD AMENDED COMPLAINT**<br><br>Docket No. 46 |

## I.    INTRODUCTION

Pro se plaintiff Susan Lloyd ("Plaintiff") brings this action against Defendants Facebook, Inc., Meta Platforms Inc., and Mark Zuckerberg (collectively "Defendants"), alleging various violations of the Americans with Disabilities Act ("ADA"), the Rehabilitation Act, the Unruh Act, as well as for fraud, intentional misrepresentation invasion of privacy, breach of contract, negligence, and negligent infliction of emotional distress. Previously, the Court dismissed Plaintiff's breach of contract claim with leave to amend, and dismissed all other claims without leave to amend. *See* Docket No. 41 ("MTD Order"). Despite the Court's order, Plaintiff has replead all dismissed claims in her Third Amended Complaint. *See* Docket No. 42 ("TAC").[1] Plaintiff has also failed to amend her breach of contract claim. *Id.* Accordingly, the Court **GRANTS** Defendants' motion to dismiss.

---

[1] Plaintiff filed a Second Amended Complaint before the Court ruled on Plaintiff's First Amended Complaint. *See* Docket No. 30. Because the Court dismissed Plaintiff's First Amended Complaint with leave to amend, the Second Amended Complaint is moot. Accordingly, this order addresses Plaintiff's Third Amended Complaint.

## II. BACKGROUND

A. Factual Background

Plaintiff alleges as follows in the Third Amended Complaint ("TAC"):

Plaintiff is a Pennsylvania resident with "severe vision issues" who has qualified as disabled under the ADA since 2006. TAC ¶ 5. Lloyd uses the Facebook platform, an online social media and networking service owned by Meta. *Id.* ¶ 6. Meta is a multinational technology conglomerate and the parent organization of Facebook, Instagram, and other subsidiaries. *Id.* ¶ 7. Meta collects revenue through the Facebook platform by using third-party advertisements. *Id.* ¶ 8. Mr. Zuckerberg is the Co-Founder and CEO of Meta and also serves as Meta's Chairman and Controlling Shareholder. *Id.*

### 1. The Facebook Platform

According to Plaintiff, the Facebook platform is not accessible to disabled individuals with no arms or problems with vision because of the following reasons:

(1) The font cannot be made larger,
(2) The platform cannot be viewed in both landscape and portrait orientations,
(3) The color combinations are not high contrast enough to be used by individuals with vision impairments,
(4) The text cannot be resized or readable when resized,
(5) The form fields do not have visible labels,
(6) Users are not made aware of missing, incorrect, or other errors entered into fields,
(7) Gifs and videos cannot be disabled to prevent seizures,
(8) Language tabs are not added,
(9) There is only an option to do dark mode or make the font smaller, and
(10) There is no accessibility statement.

*See id.* ¶ 10.

Plaintiff further claims that Defendants track her use of third party websites, such as Chewy.com or Target.com, without obtaining her permission even when she is logged off Facebook. *Id.* ¶¶ 30–31. According to Plaintiff, she is aware of this alleged tracking because advertisements from these sites immediately appear for her on Facebook after visiting them. *Id.* ¶¶ 30–32. Meta's relationship with the users—including Plaintiff—is governed by its Terms of Service (formerly known as Statement of Rights and Responsibilities), to which all users must

agree to create a Facebook account.[2]

### 2. Third-Party Harassment

Plaintiff alleges that Defendants have allowed "over 500 people to harass and bully [Plaintiff] on Facebook, led by Joshua Thornsbery" since 2016. *Id.* ¶ 23. Thornsbery and his friends, many of whom are from motorcycle gangs including the Hells Angels, do not use their real names, create multiple accounts, share passwords and "have testified that they give. . . other people. . . [access to] their accounts." *Id.* For over five years, these individuals threatened to rape and murder Plaintiff by shooting her with a gun, choking her to death, and blowing up her house. *Id.* Yet, "each time they have been reported, [Plaintiff] and others were told it does not violate community standards." *Id.*

Plaintiff also alleges that Defendants allowed Thornsbery and his friends to post Lloyd's personal information, such as her address, her photos, and photos of her property, among other things, so that others know where she lives and can harass her. *Id.* Her harassers allegedly "even post that they will sit in front of Lloyds house to harass Lloyd." *Id.* In addition, Plaintiff alleges that Defendants allow the harassers to "brag on Facebook that they pissed on Lloyd[']s fence, damaged Lloyds fence, blow cigarette smoke at Lloyd while she is on oxygen, post pictures of Lloyds cameras and state how the[y] can get around Lloyds security systems and how they can use signal jammers to block Lloyd's cameras which they did, forcing Lloyd to reinstall wired cameras." *Id.* Because many of the harassers are members of the Hells Angels, Plaintiff alleges that Defendants "allow[] the Hells Angels to have pages on their site where the[y] can organize and have gatherings" and threaten to have "the Hells Angels murder Lloyd." *Id.*

"Thornsbery. . . admits to hacking into Lloyds Facebook page and found out where Lloyd is residing in the state of Pennsylvania where he admits to still having well over 500 of his friends organized through Facebook to harass Lloyd." *Id.* Because of this harassment, Lloyd fled to Ohio for her safety. *Id.* ¶ 24.

---

[2] According to the Terms of Service, users impliedly agree to the Terms of Service by using the Facebook platform. *See* Docket No. 19, Ex. A (Facebook Terms of Service) ("We hope that you will continue using our Products, but if you do not agree to our updated Terms and no longer want to be a part of the Facebook community, you can delete your account at any time.").

### III. LEGAL STANDARD

A. Failure to State a Claim (12(b)(6))

Federal Rule of Civil Procedure 8(a)(2) requires a complaint to include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A complaint that fails to meet this standard may be dismissed pursuant to Rule 12(b)(6). *See* Fed. R. Civ. P. 12(b)(6). To overcome a Rule 12(b)(6) motion to dismiss after the Supreme Court's decisions in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544 (2007), a plaintiff's "factual allegations [in the complaint] 'must . . . suggest that the claim has at least a plausible chance of success.'" *Levitt v. Yelp! Inc.*, 765 F.3d 1123, 1135 (9th Cir. 2014). The court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). But "allegations in a complaint . . . may not simply recite the elements of a cause of action [and] must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Levitt*, 765 F.3d at 1135 (quoting *Eclectic Props. E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 996 (9th Cir. 2014)). "A claim has facial plausibility when the Plaintiff pleads factual content that allows the court to draw the reasonable inference that the Defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556).

### IV. ANALYSIS

A. Replead Claims

As a preliminary matter, the Court dismisses Plaintiff's claims against Defendant, as well as against Meta CEO Mark Zuckerberg ("Zuckerberg"), for violations of the ADA, the Rehabilitation Act, the Unruh Act, fraud, intentional misrepresentation, invasion of privacy, negligence, and negligent infliction of emotional distress. In the last dismissal order, the Court solely granted Plaintiff leave to amend the breach of contract claim. *See* MTD Order. Excepting Plaintiff's breach of contract claim, all replead claims are therefore outside the scope of the

4

1   amendment permitted by the prior dismissal order. *See id.* "When a district court grants leave to
2   amend for a specified purpose, it does not thereafter abuse its discretion by dismissing any
3   portions of the amended complaint that were not permitted." *Corrales v. Vega*, No. ED CV 12-
4   01876 JVS R, 2015 WL 575961, at *3 (C.D. Cal. Feb. 7, 2015) (citing *United States ex rel.*
5   *Atkinson v. Pennsylvania Shipbuilding Co.*, 473 F.3d 506, 524 (3d Cir. 2007)); *see also King v.*
6   *Facebook Inc.*, No. 21-CV-04573-EMC, 2022 WL 1188873 (N.D. Cal. Apr. 20, 2022); *In re*
7   *Dynamic Random Access Memory (DRAM) Antitrust Litig.*, 536 F. Supp. 2d 1129 (N.D. Cal.
8   2008).
9       Furthermore, as noted in the prior order, there are merit-based reasons to dismiss Plaintiff's
10  claims against Defendant and Zuckerberg for violations of the ADA, the Rehabilitation Act, the
11  Unruh Act, fraud, intentional misrepresentation, invasion of privacy, negligence, and negligent
12  infliction of emotional distress.[3]
13      First, Plaintiff's ADA and Rehab Act claims fail because Facebook is not a place of public
14  accommodation under Federal law. *See*, *e.g.*, *Young v. Facebook, Inc.*, 790 F. Supp. 2d 1110,
15  1115 (N.D. Cal. 2011) (holding "places of public accommodation" are limited to "actual physical
16  spaces") (citing *Weyer v. Twentieth Century Fox Film*, 198 F.3d 1104, 1114 (9th Cir. 2000)).
17  These Acts only apply to websites in the rare circumstances where there is some connection or
18  nexus "between the good or service complained of and an actual physical place." *Weyer*, 198 F.3d
19  at 1114. This nexus requirement is only met where a website's "inaccessibility impedes [the
20  plaintiff's] access to the services of the defendant's physical office." *Gomez v. Gates Ests.*, Inc.,
21  No. C-21-7147 WHA, 2022 WL 458465, at *4 (N.D. Cal. Feb. 15, 2022); *see, e.g.*, *Robles v.*
22  *Domino's Pizza, LLC*, 913 F.3d 898, 905 (9th Cir. 2019) (finding a nexus between Domino's
23  website and the physical pizza franchises because customers use the website to find nearby
24  restaurants and order pizzas). Plaintiff's Unruh Act claim fails because the Act does not apply to

---

[3] At the hearing, Plaintiff argued that her Second Amended Complaint ("SAC") addressed the substantive issues with these claims. As noted, the Court did not consider the SAC because it was filed before disposition on the First Amended Complaint. Nonetheless, even if the Court had considered Plaintiff's SAC, its decision would remain the same as Plaintiff's SAC and TAC are identical.

1  digital-only websites such as Facebook. *Martinez v. Cot'n Wash, Inc.*, 81 Cal. App. 5th 1026,
2  1039 (2022), *review denied* (Nov. 9, 2022) (concluding that the Unruh Act does not apply to
3  digital-only websites); *see also Earll v. eBay, Inc.*, 599 F. App'x 695 (9th Cir. 2015).

Second, Plaintiff's fraud and intentional misrepresentation claims fail because she fails to cite any specific instances of fraud or allege any facts supporting a reasonable inference that Facebook intended to defraud Plaintiff. Plaintiff merely discusses Facebook's Terms of Service and alleges that "[a]ll of the above is fraudulent and intentional misrepresentation by the Defendants" which "Defendants intended Lloyd to rely on[.]" TAC ¶¶ 23–25. Plaintiff fails to comply with Fed. R. Civ. P. 9(b).

Third, Plaintiff's claims for invasion of privacy, negligence, and negligent infliction of emotional distress fail because they are barred by Section 230 of the Communications Decency Act. *See Barnes v. Yahoo!, Inc.*, 570 F.3d 1096, 1099 (9th Cir. 2009) (holding that Section 230 bars any "activity that can be boiled down to deciding whether to exclude material that third parties seek to post online").

Lastly, Plaintiff's direct claims against Zuckerberg fail because she does not adequately allege that Zuckerberg was personally involved or directed the challenged acts as required by the "alter ego" theory put forth. *See Twombly*, 550 U.S. at 570; *see also Brock v. Zuckerberg*, 2021 WL 2650070, at *4 (S.D.N.Y. June 25, 2021) (dismissing claims against Mr. Zuckerberg when the plaintiff failed to allege any facts "connecting Zuckerberg. . . to [their] claims").

Accordingly, the Court **GRANTS** Defendants' motion to dismiss Plaintiff's claims for violations of the ADA, the Rehabilitation Act, the Unruh Act, fraud, invasion of privacy, negligence, and negligent infliction of emotional distress.

B.  Breach of Contract

1.  Diversity Jurisdiction

Defendants argue the Court lacks diversity jurisdiction over Plaintiff's contract claim because she cannot meet the amount in controversy. Mot. 10–11.

28 U.S.C. §1332 grants federal courts' original jurisdiction over civil actions where the amount in controversy exceeds $75,000 and the parties are citizens of different states. 28

U.S.C.A. § 1332. Courts generally accept a plaintiff's good-faith allegation in assessing the amount in controversy unless it appears to a "legal certainty" that the plaintiff cannot recover the statutory amount. *See Naffe v. Frey*, 789 F.3d 1030, 1039–40 (9th Cir. 2015).

Plaintiff's claim for breach of contract is based on conduct of third-party users. TAC ¶¶ 38–40. Facebook's Terms of Service disclaim all liability for third-party conduct. *See* Docket No. 19, Ex. A ("TOS"). The TOS also provide, "aggregate liability arising out of…the [TOS] will not exceed the greater of $100 or the amount Plaintiff has paid Meta in the past twelve months." *Id.* (alterations to original). Finally, the TOS precludes damages for "lost profits, revenues, information, or data, or consequential, special indirect, exemplary, punitive, or incidental damages." *Id.* Thus, there is a "legal certainty" that Plaintiff cannot meet the required amount in controversy of $75,000. *See Frey*, 789 F.3d at 1039–40.

Accordingly, the Court **GRANTS** Defendants' motion to dismiss because it lacks jurisdiction. The Court expresses no opinion on whether Plaintiff may pursue her contract claim in state court.

## V.     CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendants' motion to dismiss without leave to amend.

This order disposes of Docket No. 46. The Clerk is instructed to enter judgment and close the case.

**IT IS SO ORDERED**.

Dated: February 7, 2023

_____
EDWARD M. CHEN
United States District Judge