UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SUSAN LLOYD,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>FACEBOOK, INC., et al.,<br><br>　　　　Defendants. | Case No. 21-cv-10075-EMC<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS BREACH-OF-CONTRACT CLAIM**<br><br>Docket Nos. 46, 67 |

Plaintiff Susan Lloyd has filed suit against Defendants Facebook, Inc. and Mark Zuckerberg, asserting a variety of claims both sounding in tort and contract. In February 2023, the Court granted Defendants' motion to dismiss the operative third amended complaint ("TAC") and entered a final judgment in their favor. Ms. Lloyd appealed to the Ninth Circuit. The Ninth Circuit affirmed in part and reversed in part. Specifically, it upheld dismissal of all causes of action except for the claim for breach of contract which the Court had dismissed for lack of subject matter jurisdiction. On remand, Defendants have renewed their motion to dismiss the breach-of-contract claim based on failure to state a claim for relief. Having considered the papers submitted, the Court hereby **GRANTS** Defendants' motion.

## I.　　FACTUAL & PROCEDURAL BACKGROUND

Ms. Lloyd initiated suit against Defendants in December 2021. *See* Docket No. 1 (complaint). In May 2022, Ms. Lloyd filed a first amended complaint ("FAC"). *See* Docket No. 16 (FAC). In the FAC, she alleged, *inter alia*, that:

　　(1) the Facebook platform is not accessible to disabled persons such as herself;

　　(2) Facebook improperly tracks users and their activity even after they are logged off

1     Facebook; and

2     (3) Third parties – led by Joshua Thornsbery – have repeatedly harassed her on Facebook since 2016 (*e.g.*, threatening to kill or rape her and posting personal information about her including her address), but Facebook has failed to take any action in response, even after Ms. Lloyd reported the harassment.

Based on these allegations, Ms. Lloyd asserted claims for violation of the Americans with Disabilities Act, the Rehabilitation Act, and the California Unruh Act; fraud and intentional misrepresentation; invasion of privacy and violation of the right to privacy protected by the California Constitution; breach of contract; and negligence and negligent infliction of emotional distress. The claim for breach of contract was predicated on the allegations made in (3) above. According to Ms. Lloyd, Defendants had an obligation to take action based on Facebook's Statement of Rights and Responsibilities which states, *e.g.*, that users may not violate Facebook's Community Standards and that Facebook is committed to making Facebook a safe place.

Defendants moved to dismiss the FAC. The Court granted the motion in its entirety. As to the claim for breach of contract, the Court first took note of § 230(c)(1) of the Communications Decency Act which

> bars claims based on [an interactive computer] service provider's decisions about "reviewing, editing, and deciding whether to publish or to withdraw from publication third-party content." Under the statute, a claim should be dismissed if: (1) the defendant is a "provider. . . of an interactive computer service[;]" (2) the allegedly offending content was "provided by another information content provider[;]" and (3) Plaintiff's claims treat the defendant as the "publisher" of that content.

Docket No. 41 (Order at 13) (citing, *inter alia*, 47 U.S.C. § 230(c)(1)).

The Court recognized, however, that a claim for breach of contract is not necessarily barred by § 230(c)(1):

> For example, in *Barnes* [*v. Yahoo!, Inc.*, 570 F.3d 1096 (9th Cir. 2009)], the plaintiff requested that her profiles containing nude photos posted by her former boyfriend be removed multiple times. Eventually, Yahoo's director told her that they would take care of it but took no further action for months. *Id.* at 1098-99. The Ninth Circuit construed the plaintiff's allegations regarding Yahoo's promise to remove the indecent profiles and her reliance thereon to

2

> her detriment under promissory estoppel. *Id.* at 1107. The Ninth Circuit explained that liability for promissory estoppel is not necessarily for behavior that is identical to publishing or speaking. *Id.* ("Promising is different because it is not synonymous with the performance of the action promised. That is, whereas one cannot undertake to do something without simultaneously doing it, one can, and often does, promise to do something without actually doing it at the same time."). Therefore, "[c]ontract liability . . . would come not from Yahoo's publishing conduct, but from Yahoo's manifest intention to be legally obligated to do something, which happens to be removal of material from publication." *Id.*

Docket No. 41 (Order at 14).

On the other hand,

> "[a]s a matter of contract law, the promise must "be as clear and well defined as a promise that could serve as an offer, or that otherwise might be sufficient to give rise to a traditional contract supported by consideration." *Id.* at 1108 (citations omitted). "Thus[,] a general monitoring policy, or even an attempt to help a particular person, on the part of an interactive computer service such as Yahoo does not suffice for contract liability." *Id.* However, "[i]nsofar as Yahoo made a promise with the constructive intent that it be enforceable, it has implicitly agreed to an alteration in such baseline." *Id.* at 1108-09.

Docket No. 41 (Order at 15).

The Court dismissed Ms. Lloyd's claim for breach of contract because the alleged contract at issue – Facebook's Statement of Rights and Responsibilities (now known as Meta's Terms of Service) – amounted to a general monitoring policy. *See* Docket No. 41 (Order at 16) ("Facebook's Community Standards [referenced in the Statement of Rights and Responsibilities] state that they are committed to making Facebook a safe and authentic place and protecting privacy. However, merely stating that Facebook does not allow users to post harmful content and that they will remove them is mere[ly] 'a general monitoring policy' that the Ninth Circuit noted was insufficient."). The Court stated that, "[a]lthough Plaintiff alleges that the alleged posts '[have] been reported hundreds of times over the past 5 years[,]' she has also not alleged 'any specific representation of fact or promise by [Defendants] . . . beyond general statements in its monitoring policy, the type of allegation the *Barnes* court noted would be insufficient to state a claim." Docket No. 41 (Order at 16).

Although the Court dismissed the claim for breach of contract, it allowed Ms. Lloyd to

3

amend the cause of action. (The Court did not allow Ms. Lloyd to amend the other causes of action pled in the FAC.) Ms. Lloyd thus filed her TAC.[1]

In the TAC, Ms. Lloyd's claim for breach of contract was essentially supported by the same allegations made in the FAC. Below are the main allegations made in the TAC.

> 38. Facebook Statement of Rights and Responsibilities[] states that Facebook enables people to connect with each other, build communities and grow business. . . . You are not allowed to share content that is at the expense of safety and well being of others or the integrity of the community. You may not violate the Community Standards. You may not post information that is unlawful, misleading, discriminatory, or fraudulent or that infringes on someone else[']s rights. Facebook states they take seriously their role in keeping abuse off of their service. Facebook states they are committed to making [F]acebook a safe place and expression that threatens people[,] has the potential to intimidate, exclude or silence others . . . is not allowed. Facebook also states they are committed to protecting privacy and information. Facebook also states that people will respect the dignity of others and not harass or degrade others. Facebook also states they can disable accounts and contact law enforcement when there is a risk of physical harm or personal safety. They also state they do not allow organizations or individuals that proclaim a violent mission to have presence on Facebook. They also regulate the [sale] of firearms on their site. They also will re[mo]ve any content that depicts, threatens or promotes sexual violence, sexual assault or sexual exploitation. They also state they remove content that[']s meant to degrade, shame, bully or harass private individuals. They also state they will not allow others to post personal or confidential information about yourself or others. They will remove content that shares, offers or solicits personally identifiable information. They will also not allow hate speech among other things.
>
> 39. Defendants refuse to abide by their own rules and regulations. Even after being made aware of [v]iolations by other third parties via certified letters and this lawsuit, Defendants refuse to take action for the past five years. Defendants are not immune under [the Communications Decency Act §] 230 as these third parties threatened to murder and rape [Ms.] Lloyd and threats are not covered under section 230. . . . Section 230 does not shield a company from legal liability when these posts include threats against someone[']s life and criminal activity. Facebook

---

[1] The Court directed Ms. Lloyd to file a TAC – and not a second amended complaint ("SAC") – because she had filed a motion to file a SAC before the Court could rule on the motion to dismiss her FAC. The Court deemed the motion to file a SAC moot because it was giving her leave to file a TAC. *See* Docket No. 41 (Order at 19).

4

> actually uses algorithms which attract Thornsbery and others to make these posts. Thornsbery and over 500 of his friends threaten to murder and rape [Ms.] Lloyd on Facebook and brag about damaging [Ms.] Lloyd[']s property and drug use and even brag about halluci[na]ting from drug use. They also use Facebook to organize more crimes against [Ms.] Lloyd including threats to have the [H]ells Angels murder [Ms.] Lloyd. Defenda[an]ts have allowed this to occur since 2016 all the while Ohio and other states form bills to prevent threats and harassment on Facebook. Facebook is even aware that people under similar conditions [su]ch as [Ms.] Lloyd have committed suicide and [Ms.] Lloyd has been diagnosed with TSD as a result of Defendants['] actions of allowing others to threaten [her] for 5 plus years. . . . Defendants have an obligation to remove threats towards [Ms.] Lloyd so she feels safe on their site under their own contracts with [Ms.] Lloyd. Defendants violated their own contracts with [Ms.] Lloyd. No user has Freedom of Speech with their comments directed towards [Ms.] Lloyd as [she] is a private citizen. [Mr.] Zuckerberg as an alter ego is liable for orchestrating this attack towards [Ms.] Lloyd on [F]acebook.

TAC ¶¶ 38-39; *see also* FAC ¶¶ 38-39.

Defendants moved to dismiss, *inter alia*, the claim for breach of contract as pled in the TAC. The Court granted the motion. For the breach-of-contract claim, it held that diversity jurisdiction was lacking because Ms. Lloyd could not meet the amount in controversy. *See* Docket No. 51 (Order at 6-7). The Court thus entered a final judgment.

Ms. Lloyd subsequently appealed to the Ninth Circuit. The Ninth Circuit upheld the Court's rulings on all claims except for the claim for breach of contract. *See* Docket No. 59 (Order at 6-7) (reversing the dismissal of the claim for breach of contract for lack of diversity jurisdiction). The Ninth Circuit thus remanded the case back to this Court.

On remand, Defendants now ask the Court to dismiss the claim for breach of contract, not based on jurisdictional grounds but rather based on failure to state a claim for relief. *See* Fed. R. Civ. P. 12(b)(6). Defendants correctly note that the 12(b)(6) arguments were fully briefed by the parties prior to the appeal. *See* Docket Nos. 46-48 (briefs). The Court, therefore, informed the parties at a status conference that it would decide the 12(b)(6) motion based on the papers already filed.

## II. DISCUSSION

A. Legal Standard

Federal Rule of Civil Procedure 8(a)(2) requires a complaint to include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A complaint that fails to meet this standard may be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6). *See* Fed. R. Civ. P. 12(b)(6). To overcome a Rule 12(b)(6) motion to dismiss after the Supreme Court's decisions in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), a plaintiff's "factual allegations [in the complaint] 'must . . . suggest that the claim has at least a plausible chance of success.'" *Levitt v. Yelp! Inc.*, 765 F.3d 1123, 1135 (9th Cir. 2014). The court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). But "allegations in a complaint . . . may not simply recite the elements of a cause of action [and] must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Levitt*, 765 F.3d at 1135 (internal quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (internal quotation marks omitted).

B. Contract Provision

In their motion to dismiss, Defendants argue that the breach-of-contract claim, as pled in the TAC, should be dismissed because Ms. Lloyd failed to address the deficiencies identified by the Court in the claim as pled in the FAC. The Court agrees. Notably, the claim pled in the TAC is nearly the same as the claim pled in the FAC. The fundamental deficiency in the claim, as pled in both the FAC and TAC, is a failure to point to any specific contract provision (or promise) that Facebook breached. *See Coronavirus Rptr. v. Apple, Inc.*, 85 F.4th 948, 957 (9th Cir. 2023) (holding that plaintiffs failed to plead a claim for breach of contract under California law; plaintiffs "do not identify relevant provisions of the [contract], much less show that [defendant]

6

breached a specific provision"); *Morton v. Twitter, Inc.*, No. CV 20-10434-GW-JEMx, 2021 U.S. Dist. LEXIS 66897, at *12-13 (C.D. Cal. Feb. 19. 2021) (noting that plaintiff failed to "point[] to any contractual provisions, such as in Twitter's terms of service, that imposed a duty on Twitter to suspend offending accounts"; acknowledging plaintiff's citation to "two of Twitter's content-moderation policies, including the 'Non-consensual nudity policy[,]' [b]ut there is nothing to indicate that they are binding, as opposed to merely aspirational statements"). For the same reason, § 230(c)(1) is also a bar to Ms. Lloyd's breach-of-contract claim. *See Murphy v. Twitter, Inc.*, 60 Cal. App. 5th 12, 29-30, 32 (2021) (dismissing breach of contract claim based on § 230(c)(1) because plaintiff was simply attacking "Twitter's interpretation and enforcement of its own general policies rather than breach of a specific promise"; plaintiff did not identify any "specific representation of fact or promise by Twitter to Murphy . . . beyond general statements in its monitoring policy").

    The arguments that Ms. Lloyd makes in her opposition are unavailing. For example, she contends that "Defendants are relying on different terms of services than ones which applied when these incidences take place." Opp'n at 2; *see also* Opp'n at 4. But even assuming this is true, Ms. Lloyd must still point to a specific contractual provision (or promise) that Facebook breached. That is an essential part of a claim for breach of contract. *See Coronavirus Rptr.*, 85 F.4th 957 ("To state a breach of contract claim under California law, plaintiffs must show: (1) there was a contract, (2) plaintiff either performed the contract or has an excuse for nonperformance, (3) defendant breached the contract, and (4) plaintiff suffered damages as a result of defendant's breach.").

    To the extent Ms. Lloyd argues that Facebook fails to abide by its own policies, a policy is not the same thing as a contractual promise. *See Barnes*, 570 F.3d at 1108 (stating that, under contract law, a "promise must 'be as clear and well defined as a promise that could serve as an offer, or that otherwise might be sufficient to give rise to a traditional contract supported by consideration'"; "[t]hus a general monitoring policy, or even an attempt to help a particular person, on the part of an interactive computer service such as Yahoo does not suffice for contract liability"). As previously noted, there is no clear and specific contract provision relied upon by

7

1    Mr. Lloyd that takes this claim out of § 230(c)(1).

2          Finally, Ms. Lloyd's claim that § 230(c)(1) does not provide protection to a publisher when
3    a third party makes a serious threat such as murder or rape, *see* Opp'n at 4 (arguing that
4    "Defendants are obligated to follow their own policies and to remove threats to murder and rape
5    someone[;] [t]hey are not protected under Section 230"), is not well supported.  Neither the
6    statutory language nor the case law suggests that applicability of § 230(c)(1) turns on the type of
7    third-party speech involved.  *See Fed. Agency of News LLC v. Facebook, Inc.*, 432 F. Supp. 3d
8    1107, 1120 (N.D. Cal. 2020) (rejecting plaintiffs' argument that there is a political speech
9    exception to § 230(c)(1) immunity; "[t]he statutory text provides that no 'provider or user of an
10   interactive computer service shall be treated as the publisher or speaker of *any information*
11   provided by another information content provider'") (emphasis in original).  Rather, as the Ninth
12   Circuit has instructed, "courts must ask whether the duty that the plaintiff alleges the defendant
13   violated derives from the defendant's status or conduct as a publisher or speaker.  If it does, §
14   230(c)(1) precludes liability." *Calise v. Meta Platforms, Inc.*, 103 F.4th 732, 740 (9th Cir. 2024)
15   (internal quotation marks omitted); *see also Barnes*, 570 F.3d at 1101-03 (stating that "what
16   matters is whether the cause of action inherently requires the court to treat the defendant as the
17   'publisher or speaker' of content provided by another" and, if so, "section 230(c)(1) precludes
18   liability"; adding that "removing content is something publishers do, and to impose liability on the
19   basis of such conduct necessarily involves treating the liable party as a publisher of the content it
20   failed to remove"). *Compare, e.g.*, *Doe v. Internet Brands, Inc.*, 824 F.3d 846, 851 (9th Cir. 2016)
21   (noting that plaintiff did not seek to hold defendant liable as a publisher or speaker of content
22   someone posted on a website; rather, "Jane Doe attempts to hold Internet Brands liable for failing
23   to warn her about information it obtained from an outside source about how third parties targeted
24   and lured victims through [the website]").

25         The Court therefore dismisses Ms. Lloyd's claim for breach of contract.  The dismissal is
26   with prejudice because the Court previously gave Ms. Lloyd an opportunity to correct the
27   deficiency with the claim as pled in the FAC and she essentially repeated the same claim in the
28   TAC.  Another opportunity to amend is not warranted.

## III. CONCLUSION

For the foregoing reasons, the Court hereby dismisses the claim for breach of contract with prejudice. The Clerk of the Court shall enter a final judgment in accordance with this order and close the file in the case.

**IT IS SO ORDERED**.

Dated: December 16, 2024

_____
EDWARD M. CHEN
United States District Judge